No. 12762

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

THE STATE OF MONTANA, ex rel. DICK IRVIN,
INC., a Montana Corporation; Keller Transport,
Inc., a Montana Corporation et al.,

Relators,

-vs-

H. J. ANDERSON, as Director of Highways of the
State of Montana; and GEORGE VUCANOVICH, WILLIAM
M. KESSNER et al.,

Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Scribner and Huss, Helena, Montana
William A. Scribner argued, Helena, Montana
Robert L. Stephens appeared, Billings, Montana

For Respondents:

N. A. Rotering, Helena, Montana
Harry Alley argued, Helena, Montana

Amicus Curiae

Risken and O'Leary, Helena, Montana
John Risken argued, Helena, Montana

---

Submitted: May 21, 1974

Decided: JUN 2 8 1974

Filed: JUN 2 8 1974

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an original proceeding brought by certain trucking corporations, the Montana Motor Transport Association, Inc., a Montana corporation, and the National Independent Truckers Assoc. of Montana, a Montana corporation, seeking a declaratory judgment determining their rights as holders of restricted route permits issued by the State Highway Commission authorizing transportation within the weight limitations set forth in section 32-1123(5)(c), R.C.M. 1947, upon Montana's interstate highway system.

The specific legal issues sought to be determined are:

1. Can this Court adjudge and declare under the laws of the state of Montana in existence on July 1, 1956, that the State Highway Commission, its officers and agents are empowered, in appropriate cases, to issue restricted route permits authorizing the movement of vehicles over the state highways within the weight limitations set forth in section 32-1123(5)(c), R.C.M. 1947, without regard to the limitations imposed by section 32-1127, R.C.M. 1947.

2. That the action proposed to be taken by the Highway Commission on the basis of any other or contrary interpretation of law as it existed on July 1, 1956, is arbitrary, capricious and illegal.

Relators herein are truckers who presently hold restricted route permits issued by the State Highway Commission and this action is brought to prevent the Highway Commission from canceling these permits, as to their use on the interstate highways after midnight June 30, 1974. On December 11, 1973, the Highway Commission amended its regulations to allow restricted route-load permits to use the interstate highway within the state. See Montana Administrative Code 18-2.10(14)-S10140.

Relators argue that thereafter various individual relators applied for and received from the Highway Commission restricted route permits pursuant to the new regulation, authorizing travel within such increased weight limitations, paid the license fee for such permits, and in reliance thereon invested substantial amounts of capital for additional and heavier equipment to accomodate such loads.

On April 1, 1974, respondent Highway Commission reversed its action of December 11, 1973, declaring that such permits as issued would not be recognized after June 30, 1974.  We note the reasons given by the Commission:

"THE F.H.W.A FINDS THE ACTION CONTRARY TO THEIR (FHWA) INTERPRETATION OF MONTANA STATUTES REGULATING THE AXLE WEIGHT, TANDEM AXLE WEIGHT, GROSS WEIGHT OF GROUPS OF AXELS, VEHICLE OR COMBINATION OF VEHICLES, AND MAXIMUM WIDTH OF 96 INCHES, JULY 1, 1956.

"THE MONTANA HIGHWAY COMMISSION RESCINDED THEIR ACTION OF DECEMBER 11, 1973 ON APRIL 1, 1974 IN ORDER TO PROTECT THE ALLOCATION OF FEDERAL HIGHWAY FUNDS TO MONTANA FOR FUTURE CONSTRUCTION FROM CANCELLATION.  THE MONTANA HIGHWAY COMMISSION, BY THEIR ACTION, HAVE STOPPED THE ISSUANCE OF RESTRICTED ROUTE-LOAD PERMITS FOR USE ON THE INTERSTATE HIGHWAY SYSTEM (I.15, I 90, & I 94) EFFECTIVE APRIL 1, 1974. "RESTRICTED ROUTE-LOAD PERMITS ISSUED PRIOR TO APRIL 1, 1974 WILL BE RECOGNIZED FOR INTERSTATE HIGHWAY SYSTEM TRAVEL UNTIL FURTHER NOTICE, BUT UNDER NO CIRCUMSTANCES AFTER MIDNIGHT JUNE 30, 1974."  (Emphasis supplied.)

As underlined above, the Highway Commission gives two reasons for the proposed retraction of the permits (1) it is contrary to an interpretation of Montana law by employees of a federal bureau (FHWA), and (2) Montana might lose federal highway construction funds if it does not comply with the federal directive.  Yet the Court was informed by relators during oral argument, and not denied by respondents, that the U. S. Department of Transportation is sponsoring legislation before Congress allowing what was done here by the Highway Commission in December 1973.

Some 4,000 to 5,000 permits were issued on the basis of the action taken in December.  It is alleged that the reason for the change in December, permitting the use of the interstate, came about due to the existing energy shortage and a request by the Governor of Montana to federal authorities who on the basis of emergency conservation approved the request to make the change. It is conceded there is no practical reason why the interstate highway system should be the subject of weight limitations which are less than those authorized upon the other highways of the state.

The real crux of the matter here, as noted by counsel for respondents, is that the respondent Commission has since 1956 operated on either its own interpretation of Montana statutes sections 32-1123 and 32-1127, R.C.M. 1947,

or that made by federal employees. The Highway Commission has never had or requested in any case before this Court a definitive opinion to guide it.

The question of whether or not this Court can take original jurisdiction of this matter and enter a declaratory judgment has long been decided in Montana.

Under the circumstances the Court clearly has power to accept original jurisdiction and to enter a declaratory judgment. We quote from 42nd Legislative Assembly v. Lennon, 156 Mont. 416, 421, 481 P.2d 330:

> " * * * Montana case law is replete with authority sustaining the original jurisdiction of the Supreme Court in declaratory judgment actions in a variety of situations. State ex rel. Schultz-Lindsay v. Board of Equalization, 145 Mont. 380, 403 P.2d 635; Carey, State Treas. v. McFatridge, 115 Mont. 278, 142 P.2d 229; Gullickson v. Mitchell, 113 Mont. 359, 126 P.2d 1106; Bottomly v. Meagher County, 114 Mont. 220, 133 P.2d 770. The foregoing cases establish the original jurisdiction of the Supreme Court in a declaratory judgment action where legal questions of an emergency nature are presented and ordinary legal procedures will not afford timely or adequate relief."

Although the question involved in this case can be simply stated, much background information is needed before its significance can be appreciated. We must first go back to the federal law establishing the interstate highway system for an understanding of why the dispute has arisen. On August 27, 1958, the Congress of the United States enacted public law 85-767, which as amended is codified as Title 23, Section 127 of the United States Code. The section reads as follows:

> "No funds authorized to be appropriated for any fiscal year under section 108(b) of the Federal-Aid Highway Act of 1956 shall be apportioned to any State within the boundaries of which the Interstate System may lawfully be used by vehicles with weight in excess of eighteen thousand pounds carried on any one axle, or with a tandem-axle weight in excess of thirty-two thousand pounds, or with an over-all gross weight in excess of seventy-three thousand two hundred and eighty pounds, or with a width in excess of ninety-six inches, or the corresponding maximum weights or maximum widths permitted for vehicles using the public highways of such State under laws or regulations established by appropriate State authority in effect on July 1, 1956, whichever is the greater. Any amount which is withheld from apportionment to any State pursuant to the foregoing provisions shall lapse. This section shall not be construed to deny apportionment to any State allowing the operation within such State of

any vehicles or combinations thereof that could be lawfully operated within such State on July 1, 1956. With respect to the State of Hawaii, laws or regulations in effect on February 1, 1960, shall be applicable for the purposes of this section, in lieu of those in effect on July 1, 1956."

The foregoing section prescribes the limitations which must be observed by the states in order for them to qualify for their annual apportionment of federal funds for highway purposes. The section reveals the following criteria for determining permitted sizes and weights on the interstate system:

a. The state laws in effect on July 1, 1956, must be examined for the purpose of determining whether the maximums prescribed in the federal code or the maximums prescribed by state law apply. If the state law permitted greater maximums as of July 1, 1956, these are controlling, otherwise, the federal maximum prevails.

b. If the state law in effect on July 1, 1956, authorized variations from the maximums, by special permit or otherwise, such variations are also permitted by the federal statutes to be authorized over the interstate system. Furthermore, a state statute passed after July 1, 1956, setting forth procedures or limitations with respect to such variations may also apply to the interstate system, if the state statutes in effect on July 1, 1956, were broad enough to allow such operations. This is made clear by the following provision of Title 23, Section 127, U.S.C.:

"This section shall not be construed to deny apportionment to any State allowing the operation within such State of any vehicles or combinations thereof that could be lawfully operated within such State on July 1, 1956."

It thus becomes necessary for us to examine the Montana laws in effect on July 1, 1956 to determine, first, the weight limitations having general applicability at that time, and second, the extent to which variations from these weight limitations were authorized by special permit at that time. It is also important for us to examine the amendments to these provisions enacted by the legislature after July 1, 1956, for the purpose of determining whether the operation of vehicles or combinations thereof in accordance with such amendments was permitted by the Montana law in existence on July 1, 1956.

On July 1, 1956, section 32-1123, R.C.M. 1947, contained tables of maximum weights which varied in accordance with the distance between axles of the vehicle or combination, up to a maximum of 76,800 pounds for the maximum distance. Another portion of the same section, sub-paragraph 5(f), provided as follows:

> "(f) The operation of vehicles or combinations of vehicles having dimensions or weights in excess of the maximum limits herein recommended shall be permitted only if and when authorized by special permit issued by the state highway commission or its officers, supervisors or agents acting pursuant to duly delegated authority from said commission, including the state highway patrol."

The aforementioned statutory provisions, considered without reference to other statutes, lead us to the conclusion that not only are the general weight limitations set forth in the statute greater than those prescribed by federal law, and therefore applicable, but also that on the controlling date the State Highway Commission and its agents had authority to issue special permits for weights in excess of those granted, without limitation except as contained in the above quotation. From this it would follow that the Commission and its agents have the same authority to issue special permits for operation over the interstate system.

However, another statute in effect on July 1, 1956, must also be considered. On that date section 32-1127, R.C.M. 1947, provided in part as follows:

> "The state highway commission, and local authorities in their respective jurisdiction, may, in their discretion, upon application in writing and good cause being shown therefor, issue a special permit in writing, authorizing the applicant to operate or move a vehicle of a size or weight exceeding the maximum specified in this act upon any highway under the jurisdiction of and for the maintenance of which the body granting the permit is responsible; provided, however, that no permits are to be issued for movement of vehicles carrying built-up or reducible loads in excess of nine (9) feet in width or exceeding the length, height, or weight specified in this act; provided, however, that no permits are to be issued for the moving of loads for any considerable distances over such highways when the loads in question are of such excess width that all traffic lanes upon the highway concerned would be blocked to the serious inconvenience of normal traffic; and further provided that no permits are to be granted for the moving of loads of such excess width that a hazard to traffic would

be involved for any considerable distances over the high-
ways concerned except to those applicants who carry public
liability and property damage insurance for the protection
of the traveling public as a whole.  No permit shall be
issued for a period of more than nine (9) months."

From this it will be observed that as of July 1, 1956, there were

two separate statutory provisions authorizing the issuance of special permits

for weights in excess of the maximums prescribed by law.  Sub-paragraph 5(f)

of 32-1123, applicable only to the State Highway Commission and its agents,

contained no significant limitations upon the authority therein granted.

Section 32-1127 appears to be applicable to the State Highway Commission and

to local authorities within their respective jurisdictions, and carries the

limitation that no such permits may be granted for vehicles carrying built-

up or reducible loads.  It should be noted at this point that each of these

statutory provisions is still on the books.  Sub-paragraph (5)(f) of section

32-1123 has been reenacted with identical language in amendments to the sec-

tion in the years 1959, 1961, 1967, and 1973.  Section 32-1127 was amended

in 1961, 1965, 1969, and 1971.  The 1961 amendment to section 32-1127 revised

the language regarding built-up or reducible loads to read as follows:

" * * * provided, however, that only the state highway
commission shall have the discretion to issue permits for
movement of vehicles carrying built-up or reducible loads
in excess of nine (9) feet in width or exceeding the length,
height or weight specified in this act * * *."

More about this amendment later.

In 1967, the legislature amended section 32-1123 by adding a provision

which authorized the State Highway Commission to issue special permits for

weights in excess of the table of maximums therein prescribed, in accordance

with an increased table of weights, commonly referred to as "Table B" up to

a maximum of 105,500 pounds.  This added provision contained the following state-

ment.

"This subdivision shall have no application to highways
which are a part of the National System of Interstate and
Defense Highways (as referred to in section 127 of title
23, United States Codes) when such application would
prevent this state from receiving any federal funds for
highway purposes."

- 7 -

At the time of this amendment and the other amendments to this statute, the legislature reenacted into law sub-paragraph /(f) giving the State Highway Commission exclusive authority to issue permits for excess weights.

(5)

Prior to its reconsideration of this question in December 1973, the State Highway Commission recognized its right to grant restricted route permits for excess weights on the interstate system, but only with respect to nonreducible loads. Shortly after the legislature amended section 32-1127, R.C.M. 1947, to remove the reducible load feature, communications were exchanged between the bureau of public roads and the Highway Commission regarding the effect this amendment would have on the state's eligibility for federal highway funds. By letter dated March 28, 1961, the bureau quoted a ruling from its legal division concluding that the amendments to the law would enlarge the exemptions in effect on July 1, 1956, and would thus place Montana in a position of jeopardy. The Highway Commission replied stating that it would adhere to a policy of not allowing permits for movement of reducible loads exceeding the statutory weight specifications, and thereafter, on June 21, 1962, it certified to the bureau that by reason of its policy statement no changes had been effected by the state with respect to the granting of permits. Apparently, neither the bureau of public roads nor the Highway Commission considered the provisions of sub-paragraph/ (f) of section 32-1123 when these conclusions were reached.

(5)

When the energy crisis was announced by the President last fall, and when the extent of the fuel shortage became known, the Montana Highway Commission reconsidered its position and directed its legal department to review the applicable law to determine whether the Commission did in fact have authority to issue restricted route permits within the Table B maximums on July 1, 1956. Similar movements were under way in other western states. In Montana, it was concluded the power to issue such permits was always vested in the Highway Commission, by virtue of the provisions of sub-paragraph (5)(f), section 32-1123, R.C.M. 1947. In arriving at this conclusion, the Commission

considered also the provisions of section 32-1127, but concluded the only harmonious construction of the two sections was that the nonreducible load restriction in the latter section was applicable only to the local authorities therein referred to.

We find the interpretations placed upon these Montana statutes by the federal highway administration, and since acquiesced in by respondents, if concurred in by this Court, would constitute a repeal of the provisions of sub-paragraph (5)(f) of section 32-1123, R.C.M. 1947. This sub-paragraph, which was in effect July 1, 1956, and which has been repeatedly reenacted into law each time other provisions of the section were changed, clearly provides the authority which is now denied by the Commission and further grants such authority exclusively to the State Highway Commission and its agents. We find the only reasonable resolution of the conflict between this sub-paragraph and section 32-1127, R.C.M. 1947, is by a construction of these statutes together, to the effect that sub-paragraph (5)(f) of section 32-1123 is an expansion of the powers granted in section 32-1127. A contrary interpretation would necessarily lead to the following conclusions: that sub-paragraph (5)(f) is a nullity; that the legislature did not mean what it said when it granted exclusive powers to the State Highway Commission; and, that each time the sub-paragraph was reenacted the legislature was performing an idle act. This strained interpretation would also violate established principles of statutory construction. Some of these principles are as follows:

The court will presume that the legislature would not pass useless or meaningless legislation. St. Paul Fire & Marine Ins. Co. v. Thompson, 150 Mont. 182, 433 P.2d 795.

In the construction of a statutory provision it will be presumed that the legislature, in adopting it, intended to make some change in the existing law, and the courts will endeavor to give some effect to the enactment. Nichols v. School District No. 3, 87 Mont. 181, 287 P. 624; State v. Swanberg, 130 Mont. 202, 299 P.2d 446; Van Tighem v. Linnane, 136 Mont. 547,

349 P.2d 569; State ex rel. Special Road Dist. v. Millis, 81 Mont. 86, 261 P. 885; In re McLure's Estate, 68 Mont. 556, 220 P. 527; 73 Am Jur 2d, Statutes, § 253, p. 424.

The court must harmonize statutes relating to the same subject, if possible, and give effect to each. State ex rel. Riley v. District Court, 103 Mont. 576, 64 P.2d 115; State ex rel. Patterson v. Lentz, 50 Mont. 322, 146 P. 932; 82 C.J.S. Statutes § 366, p. 810.

In conclusion, we observe that no useful purpose is served by the Highway Commission's cancellation of these restricted route permits. Fuel costs have skyrocketed since last fall when the restricted route permits were authorized, and the energy shortage is still critical. No responsible authority would contend that our system of interstate highways will not with-stand the Table B weights, which have been utilized since 1967 on the primary highways in the state, and which the department of transportation has recom-mended for adoption on all interstate highways.

We hold the State Highway Commission had the authority to issue such permits on July 1, 1956, for either nonreducible or reducible loads and, accord-ingly, it has the power to do so now, without jeopardizing the right of the State of Montana to receive federal funds for highway purposes.

This opinion shall constitute a declaratory judgment and is hereby entered in accordance with the foregoing opinion.

_John Conway Harrison_
Acting Chief Justice

We concur:

_Gen B Daly_

_Wesley Castles_

Justices

- 10 -