SOUTH DAKOTA TRUCKING ASSOCIA-
TION, INC., a South Dakota Corpora-
tion; United Parcel Service, Inc., an
Ohio Corporation; American Freight
Systems, Inc., a Delaware Corporation;
Dan Dugan Transport Company, a South
Dakota Corporation; Barber Transpor-
tation Company, a South Dakota Corpo-
ration; Campbell Supply Company, a
South Dakota Corporation; L. G. Ever-
ist, Inc., an Iowa Corporation; Universal
Transport, Inc., a South Dakota Corpo-
ration, Plaintiffs and Appellees,

v.

SOUTH DAKOTA DEPARTMENT OF
TRANSPORTATION; Eugene L. Row-
en, in his capacity as Secretary of the
South Dakota Department of Transpor-
tation; South Dakota State Transporta-
tion Commission; Robert Appelwick,
Patrick Beckman, Roger Bernard,
James Doyle, Donald Jacobsen, Jerry
Leidholt, James L. Rothstein, James H.
Sharp, Jerry Shoener and Gene Grossen-
burg, in their capacity as members of
the South Dakota State Transportation
Commission, Defendants and Appel-
lants.

Nos. 13334, 13341.

Supreme Court of South Dakota.

Argued March 18, 1981.

Decided May 6, 1981.

Robert L. Thomas of May, Johnson, Doyle & Becker, Sioux Falls, for plaintiffs and appellees.

Carl W. Quist, Asst. Atty. Gen., Pierre, for defendants and appellants; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

DUNN, Justice.

This is an appeal from a declaratory judgment and writ of mandamus entered in favor of appellees. We affirm.

The facts of this case are quite simple. On October 29, 1975, the South Dakota State Transportation Board (Board) adopted rules that allowed for vehicles with a gross weight of up to 95,000 pounds to be operated upon the interstate highway system. ARSD 70:01:04:41–45. Prior to that date the maximum weight limit was 80,000 pounds. Permits were required to operate at these heavier weights. These permits were granted by issuing single-trip permits in books of ten. On March 10, 1978, the Board adopted another resolution approving a one-year test to allow motor carriers to operate three-unit combinations with a gross vehicle weight of 129,000 pounds. This also required special permits, which were issued in books of ten single-trip permits.

On June 19, 1980, the Federal Highway Administration (FHWA) notified the Board that continued issuance of single-trip permits for loads over 80,000 pounds on the interstate highways would result in its recommending to the United States Secretary of Transportation that future federal interstate funding apportionments to South Dakota be withheld in accordance with 23 U.S.C. § 127. This was based on FHWA's determination that South Dakota law as of July 1, 1956, did not allow the issuance of permits for weights over 80,000 pounds and therefore violated 23 U.S.C. § 127, which states that federal funds can be withheld.[1]

---

1. 23 U.S.C. § 127 provides:

No funds authorized to be appropriated for any fiscal year under section 108(b) of the Federal-Aid Highway Act of 1956 shall be apportioned to any State within the boundaries of which the Interstate System may lawfully be used by vehicles ... with an overall gross weight on a group of two or more consecutive axles produced by application of the following formula:

$$W = 500 \left( \frac{LN}{N-1} + 12N + 36 \right)$$

where W = overall gross weight on any group of two or more consecutive axles to the nearest 500 pounds, L = distance in feet between the extreme of any group of two or more consecutive axles, and N = number of axles in group under consideration, except that two consecutive sets of tandem axles may carry a gross load of 34,000 pounds each providing the overall distance between the first and last axles of such consecutive sets of tandem axles is thirty-six feet or more: *Provided*, That such overall gross weight may not exceed eighty thousand pounds ... or the corresponding maximum weights ... permitted for vehicles using the

The Board capitulated to the FHWA's demands and ceased issuing permits to appellees. Appellees thereafter sought a declaratory judgment and writ of mandamus to require the continuation of the issuance of these permits. The trial court held for appellees.

Two issues are raised on appeal: (1) Whether mandamus is a proper remedy; and (2) whether appellants were authorized under the laws in effect on July 1, 1956, to issue such single-trip permits.

■ Generally, for a party to be granted a writ of mandamus " '. . . he must have a clear legal right to have a service performed by the party to whom he seeks to have the writ directed.' " *Bandy v. Mickelson*, 73 S.D. 485, 488, 44 N.W.2d 341, 342 (1950), quoting from *Bailey v. Lawrence*, 2 S.D. 533, 537, 51 N.W. 331, 332 (1892). If the service or action which one seeks to compel is discretionary the proper exercise of such discretion will not be interfered with. This is not to say that there are no checks on such discretion.

> " . . . The discretion must be exercised under the established rules of law, and it may be said to be abused within the foregoing rule where the action complained of has been arbitrary or capricious, or based on personal, selfish, or fraudulent motives, or on false information, or on a total lack of authority to act, or where it amounts to an evasion of a positive duty, or there has been a refusal to consider pertinent evidence, hear the parties when so required, or to entertain any proper question concerning the exercise of the discretion, or where the exercise of the discretion is in a manner entirely futile and known by the officer to be so and there are other methods which if adopted would be effective."

*State v. Richards*, 61 S.D. 28, 38–39, 245 N.W. 901, 905 (1932) (citations omitted). Moreover, an erroneous view of the law is sufficient to constitute an abuse of discretion. *Richards*, supra.

■ We must therefore ascertain whether the issuance of these permits is a discretionary function. If it is merely ministerial, mandamus will lie. If it is discretionary, we must further ascertain whether the Board abused its discretion and if so, mandamus will lie; otherwise, mandamus is improper.

The issuance of permits usually is a discretionary function. 52 Am.Jur.2d Mandamus § 208 (1970). See generally *McAthie v. Frieberg*, 66 S.D. 192, 280 N.W. 871 (1938). Appellees concede this. Also, the legislature, in enacting SDCL 32–22–38, recognized this as being discretionary, as do the administrative rules promulgated thereunder.[2]

We agree that the issuance of such permits is discretionary. Therefore, we must determine whether the Board abused its discretion in one of the manners set out in *Richards*, supra.

public highways of such State under laws or regulations established by appropriate State authority in effect on July 1, 1956 . . . . Any amount which is withheld from apportionment to any State pursuant to the foregoing provisions shall lapse. This section shall not be construed to deny apportionment to any State allowing the operation within such State of any vehicles or combinations thereof that could be lawfully operated within such State on July 1, 1956[.] (Emphasis in original.)

2. SDCL 32–22–38, as amended in 1980, provides:

> The secretary of the department of transportation or his designee or any county treasurer may issue a written or telegraphic permit for a fee or fees to be fixed, authorizing an applicant to move any kind or form of vehicle or building for a single trip over a route to be designated by the authority issuing the permit, to any point in or through this state upon its state trunk highways or the national system of interstate highways despite the fact that the maximum specifications of the vehicle and load or building exceed the maximum vehicle and load specifications set forth in this chapter.

ARSD 70:01:04:04 provides:

> Permits will be issued at the discretion of the issuing authority as described in § 70:01:04:02 and exceptions thereto. An application for a permit does not assure permit approval and the permit issuing authority in exercising his discretion shall be guided by the rules in this chapter.

■ Appellees' claim for the issuance of a writ of mandamus either rises or falls upon the theory that appellants abused their discretion in refusing to issue these permits. Appellees' argument must, in our view, rest upon whether the appellants' conduct was prompted by a misconstruction of the law involved to such a degree as to render it an arbitrary action and an abuse of discretion. *Wood v. Waggoner*, 67 S.D. 365, 293 N.W. 188 (1940). The answer to this question requires analysis of federal law and its relation to South Dakota law.

Under 23 U.S.C. § 127 we must examine the state laws in effect on July 1, 1956, to determine whether they allowed these maximum weights by special permit. In making this determination we are guided by *State ex rel. Dick Irvin, Inc. v. Anderson*, 164 Mont. 513, 525 P.2d 564 (1974). The Montana Court was faced with an *identical* factual setting and *identical* issues. Obviously Montana's law differs from our own and therefore may allow for such permits where South Dakota law does not; however, we find their analytical framework and criteria to be the proper approach. Therein it is stated:

> The section [23 U.S.C. § 127] reveals the following criteria for determining permitted sizes and weights on the interstate system:
>
> a. The state laws in effect on July 1, 1956, must be examined for the purpose of determining whether the maximums prescribed in the federal code or the maximums prescribed by state law apply. If the state law permitted greater maximums as of July 1, 1956, these are controlling, otherwise, the federal maximum prevails.
>
> b. If the state law in effect on July 1, 1956, authorized variations from the maximums, by special permit or otherwise, such variations are also permitted by the federal statutes to be authorized over the interstate system. Furthermore, a state statute passed after July 1, 1956, setting forth procedures or limitations with respect to such variations may also apply to the interstate system, if the state statutes in effect on July 1, 1956, were broad enough to allow such operations. This is made clear by the following provisions of Title 23, Section 127, U.S.C.:
>
> > "This section shall not be construed to deny apportionment to any State allowing the operation within such State of any vehicles or combinations thereof that could be lawfully operated within such State on July 1, 1956."

*Anderson*, supra, at 567–568.

The maximum weight allowed in South Dakota as of July 1, 1956, was 64,650 pounds. SDC 44.0336(6)(e). Therefore, we must determine whether state law at that time allowed for issuance of permits similar to those here in issue.

SDC 44.0336(6)(e), 44.0337 and 44.0342, which were in effect on July 1, 1956, all dealt with the issuance of permits for overweight vehicles.[3] The basis of the FHWA's

---

**3.** SDC 44.0336(6)(e) provides, in part:

The limitations herein imposed shall always apply, unless special permits are issued by the authorities empowered by the statutes of this state to issue same, shall have been issued in accordance with law allowing vehicles with different weights, heights, length or width to temporarily operate[.]

SDC 44.0337 provides:

Whenever it shall be necessary to transport a single article which cannot be divided and which exceeds the width of ninety-six inches or exceeds in weight the maximum fixed by statute, over any public highway, the same shall be transported only after the issuance of a special written permit for a single trip, to be issued by the county highway superintendent, or other person, charged with the maintenance of the highway over which such transportation is to be had.

SDC 44.0342 provides:

The State Highway Commission and local authorities in their respective jurisdictions may in their discretion upon application in writing and good cause being shown therefor, issue a special permit in writing authorizing the applicant to operate or move a vehicle of a size or weight exceeding the maximum specified in this chapter upon any highway under the jurisdiction of and for the maintenance of which the body granting the permit is responsible. Every such permit shall be issued for a single trip and may designate the route to be traversed and contain any other restrictions or conditions deemed necessary by the body granting such permit. Every such permit shall be carried in

determination that these permits were not allowed on July 1, 1956, is that SDC 44.0342 uses the term "vehicle" instead of vehicle and load. FHWA therefore determined that permits allowed under SDC 44.0342 applied only to a vehicle itself, exclusive of any load it is carrying.

We might be predisposed to agree with the FHWA's interpretation were it not for the presence of SDC 44.0338, 44.0341 and 44.0343. When viewed in conjunction with these sections, FHWA's otherwise logical argument loses its compulsion.

SDC 44.0338 refers to weights of a "vehicle and the load" until the last sentence, which then refers to "gross weight of the vehicle." SDC 44.0341 also uses the terms "vehicle and load" and "gross weight of such vehicle" interchangeably. Standing alone, these statutes probably would not be enough to defeat FHWA's arguments. SDC 44.0343, however, provides the straw which breaks the back of FHWA's logic.

■ SDC 44.0343 allows for local authorities to regulate the operation of "vehicles" on highways within their jurisdiction.[4] It is highly significant that SDC 44.0343 provides for "restrictions as to the weight of vehicles." Nowhere is any term other than vehicles used. Thus, if we were to follow the FHWA's logic, we must conclude that SDC 44.0343 only allowed for the regulation of the vehicle's weight; any load it carried could not be regulated, rendering the statute ineffective and meaningless. This is an aberration which could not have been intended by the legislature. We must "presume that the legislature intended to enact a valid and effective statute, and there is a presumption against a construction which would render a statute ineffective or meaningless." *City of Sioux Falls v. State Board of Equalization,* 87 S.D. 106, 109, 203 N.W.2d 419, 420 (1973). We therefore hold that SDC 44.0342 was not limited merely to the vehicle itself. Rather, it applied to the gross vehicle, to-wit: vehicle and any load.

■ FHWA also concluded that even if SDC 44.0342 allowed for issuance of such permits, the permits cannot now be routinely granted unless they were routinely granted on July 1, 1956; however, 23 U.S.C. § 127 contains no such requirement. Instead, 23 U.S.C. § 127 states in part that: "This section shall not be construed to deny apportionment to any State allowing the operation within such State of any vehicles or combinations thereof that *could* be lawfully operated within such State on July 1, 1956[.]" (Emphasis added.) This clearly does not require that such vehicles be currently operated within the state as of July 1, 1956, but only that they could have been. See *Anderson,* supra.

We find a statement by the Montana Court in *Anderson,* 525 P.2d at 570, conclusive here.

In conclusion, we observe that no useful purpose is served by the . . . cancellation of these restricted route permits. Fuel costs have skyrocketed since last fall when the restricted route permits were authorized, and the energy shortage is still critical. No responsible authority would contend that our system of inter-

the vehicle to which it refers and shall be open to inspection by any peace officer.

4. SDC 44.0343 provides:
  Local authorities may by ordinance or resolution prohibit the operation of vehicles upon any highway or impose restrictions as to the weight of vehicles for a total period not to exceed ninety days in any one calendar year, when operated upon any highway under the jurisdiction of and for the maintenance of which such local authorities are responsible whenever any said highway by reason of deterioration, rain, snow, or other climatic conditions will be seriously damaged or destroyed unless the use of vehicles thereon is prohibited or the permissi-

ble weights thereof reduced. Such local authorities enacting any such ordinance or resolution shall erect or cause to be erected and maintained signs designating the provisions of the ordinance or resolution at each end of that portion of any highway affected thereby and the ordinance or resolution shall not be effective until or unless such signs are erected and maintained. Local authorities may also by ordinance or resolution prohibit the operation of trucks or other commercial vehicles or impose limitations as to the weights thereof on designated highways, which prohibitions and limitations shall be designated by appropriate signs placed on such highways.

state highways will not withstand the ... weights[.]

We hold that the Board's action in denying these permits was based on an erroneous interpretation of state laws and therefore was an abuse of discretion. As for appellee's notice of review, in light of our decision, we choose not to reach it.

Accordingly, we affirm.

All the Justices concur.