Dear Secretary McBride,
¶ 0 Attorney General Loving has received your letter asking for an official opinion addressing, in effect, the following questions:
 1. What is the authority of the Commissioner of Public Safety to issue overweight vehicle permits under the second exception to the vehicle weight limits of 23 U.S.C.A. 127(a)?
 2. Under the third exception to the vehicle weight limits of 23 U.S.C.A. 127(a), may Oklahoma's weight limits for groups of two or more consecutive axles and the overall gross vehicle weight limit of 90,000 pounds be utilized for vehicles using the Interstate System in Oklahoma?
 3. Should Chapter 14 of Oklahoma's Highway Safety Code, 47 O.S. 14-101 (1991), et seq., be read in a manner consistent with the Oklahoma Legislature's express intent to ensure receipt of federal highway monies?
¶ 1 Consideration of your request requires not only an analysis of parts of Oklahoma's Highway Safety Code (Oklahoma Code), 47O.S. 14101 (1991), et seq., but also a review of pertinent federal laws which affect Oklahoma's regulation of vehicle weight on its interstate highways.
 I. PREREQUISITES FOR FEDERAL FUNDING OF THE INTERSTATE SYSTEM
¶ 2 The Federal-Aid Highway Act of 1958 (Act) created four federal-aid highway systems: `IThe primary system, the urban system, the secondary system, and the Interstate System." Federal-Aid Highway Act, Pub.L. No. 85767, 72 Stat. 885 (1958);23 U.S.C.A. 103(a). To fund the development of the Interstate System, the federal government pays 90 percent of the cost of its construction through the apportionment of federal funds while states pay the remaining 10 percent. 23 U.S.C.A. 120(a); seeCenter for Auto Safety v. Dole, 582 F. Supp. 1444, 1446 at n. 3 (D.D.C. 1984).
¶ 3 In order to avoid losing their apportionment of appropriated highway funding, states must enforce federal mandates regarding the Interstate System. Specifically, the Act provides that any state which by its own laws allows certain overweight vehicles on the Interstate System shall not be apportioned the highway funds appropriated under the Act.23 U.S.C.A. 127(a) (federal 127(a)). Moreover, if a state, according to the determination of the United States Secretary of Transportation, "is not adequately enforcing all State laws respecting such maximum vehicle size and weights," then the Secretary may reduce by 10 percent the Federal aid highway funds apportioned to that state. 23 U.S.C.A. 141(c)(2).
¶ 4 In the Oklahoma Code, specifically 47 O.S. 14-101(c) (1991), the Legislature recognizes the funding mandate of federal 127(a) and expresses its intent that the apportionment of federal highway monies not be jeopardized. Section 47 O.S. 14-101(c) provides:
 All . . . weight . . . provisions covered by this chapter shall be subject to the limitations imposed by Title 23, United States Code, Section 127, and such other rules and regulations developed herein. Provided further that any size and weight provision authorized by the United States Congress for use on the Interstate System, including but not limited to . . . axle weight, gross weight, combinations of vehicles or load thereon, exceeding the size and weight provisions of this chapter shall be authorized for immediate use on Oklahoma Highways including the State Highway Trunk System. Said State Highway Trunk System shall include the Interstate System and any other highways or portions thereof as designated by the Transportation Commission or their duly authorized representative.
47 O.S. 14-101(c) (1991) (emphasis added).
¶ 5 Despite this recognition of the federal funding mandate, the Oklahoma Code in other sections establishes vehicle weight limits that differ in several respects from those set out in federal 127(a). Accordingly, in order to answer your questions, we must compare the vehicle weight limits of federal 127(a) with the limits found in the Oklahoma Code to determine whether the Oklahoma provisions comply with the federal funding mandate.
 II. THE FEDERAL FUNDING MANDATE
A. Federal Section 127(a)
¶ 6 The federal funding mandate of federal 127(a) places four weight limits on vehicles traveling the Interstate System.[1] First, a state may not allow the maximum gross weight of a single axle on a vehicle traveling the Interstate System to exceed 20,000 pounds. 23 U.S.C.A. 127(a). Second, a state cannot allow the maximum gross weight of a tandem axle on a vehicle traveling the Interstate System to exceed 34,000 pounds.Id.
¶ 7 Third, a vehicle using the Interstate System is limited to "an overall maximum gross weight . . . on a group of two or more consecutive axles produced by application" of a formula incorporating the distance in feet between the extreme of any group of two or more consecutive axles and the total number of axles on the vehicle being weighed. Id. This third limit, added in 1975, is commonly referred to as the Federal Bridge Formula, and the table produced by plugging the appropriate numbers into the Federal Bridge Formula is commonly known as the Federal Bridge Table B. (The Federal Bridge Formula and Federal Bridge Table B may hereinafter be referred to as the federal group of axle weight limits.) Fourth, notwithstanding the first three limits, the overall gross weight for a vehicle using the Interstate System may not exceed 80,000 pounds. Id.
B. Exceptions to the Weight Limits of the Federal FundingMandate of Federal Section 127(a)
¶ 8 Federal 127(a) allows three exceptions to the specific single axle, tandem axle, group of axle, and overall gross vehicle weight limits. The first exception, added by Congress in 1982, provides that the overall gross vehicle weight limit does not apply to vehicles and loads "which cannot be easily dismantled or divided and which have been issued special permits in accordance with applicable State laws." 23 U.S.C.A. 127(a).
¶ 9 Second, instead of the single axle, tandem axle, and overall gross vehicle weight limit of federal 127(a), a State may use "the corresponding maximum weights permitted for vehicles using the public highways of such State under laws or regulations established by appropriate State authority in effect on July 1, 1956 . . . whichever is the greater." Id. (Emphasis added). To reinforce this exception, federal 127(a) further provides that its provisions shall not be construed to deny apportionment "to any State allowing the operation within such State of any vehicles or combinations thereof . . . which the Statedetermines could be lawfully operated within such State on July1, 1956." Id. (Emphasis added.)
¶ 10 Third, if, on January 4, 1975, the date of enactment of the Federal-Aid Highway Amendments, a state had corresponding group of axle weight limits greater than the federal group of axle weight limits, then those corresponding group of axle weight limits are allowed under federal 127(a). Id.
¶ 11 This opinion does not specifically discuss the first exception to the weight limits of federal 127(a), which applies to "vehicles and loads which cannot be easily dismantled or divided and which have been issued special permits in accordance with applicable State laws," 23 U.S.C.A. 127(a), because the issues raised in your questions do not require such discussion. We specifically discuss the second and third exceptions, because they are directly implicated by your questions. As both of those exceptions refer to and depend on prior Oklahoma law, we examine Oklahoma law that existed on the applicable dates to determine the weight limits and permit authority in effect on those dates.
 III. THE SECOND EXCEPTION: STATE AUTHORITY IN EFFECT ON JULY 1, 1956
¶ 12 Under the second exception set forth in federal 127(a), a state is allowed to use its corresponding single axle, tandem axle, and overall gross vehicle weight limits greater than those weight limits found in federal 127(a) if the state's greater corresponding limits were in effect on July 1, 1956.23 U.S.C. 127(a). If the state's limits were not greater than the federal limits on July 1, 1956, then the weight limits of federal 127(a) apply. Id.
¶ 13 Oklahoma vehicle weight law in effect on July 1, 1956, generally provided three different weight limits corresponding to the weight limits of federal 127(a). First, a vehicle could not exceed 60,000 pounds gross weight. 47 O.S. 116.1(4)(a) (1955). Second, a single axle on a vehicle, or axle load,[2] could not exceed 18,000 pounds. Id. Third, weight limits were placed on groups of axles, and these limits were expressed in a bridge table.[3] In the left hand column of the table was the distance in feet between the extreme axles of any group of axles on a vehicle and in the right hand column were the various maximum weights of axle loads in pounds which corresponded to the various distances in feet between the extreme axles of any group of axles in the left hand column. 47 O.S. 116.1(4)(b) (1955). The maximum weight allowed in this table was 60,000 pounds. Id.
These group of axle weight limits must be examined under the third exception of federal 127(a), and not the second exception, because Oklahoma law on January 4, 1975, not July 1, 1956, will determine if these group of axle weight limits fall under the third exception of federal 127(a).
¶ 14 A comparison of the weight limits of federal 127 and Oklahoma's limits in effect on July 1, 1956, shows that the limits in federal 127(a), i.e., the single axle, the tandem axle, and the overall gross vehicle weight limit, are all greater than the corresponding weight limits generally allowed for vehicles using the highways of Oklahoma on July 1, 1956. Because the federal limits are greater than the corresponding Oklahoma limits in effect on July 1, 1956, according to federal 127 the weight limits allowed in Oklahoma are the weight limits found in federal 127(a).
¶ 15 In 1956, however, Oklahoma law also provided that the Commissioner of Public Safety (Commissioner) could except vehicles from the weight limits and issue single trip emergency permits under the following strict conditions:
 The Commissioner of Public Safety, when in his judgment an emergency exists, with respect to highways on the State Highway System, may, in his discretion, subject to the approval of the State Highway Commission[4] . . . after such investigations and inspections as they may deem advisable, issue a special permit in writing for the operation of a vehicle or combination of vehicles in excess of 60,000 pounds gross weight for single load units which cannot be divided; provided there are a sufficient number of axles so that no axle load will be in excess of 18,000 pounds. . . . Such special permit for the movement of overweight vehicles shall be issued only for a single trip and only for the shortest practicable distance upon any highway as determined by the issuing authorities.
47 O.S. 116.3(a) (1951) (emphasis added).
¶ 16 According to the language of this provision, a "single trip emergency permit" could be issued at the discretion of the Commissioner only if five conditions were met: (1) an emergency existed; (2) the permit was for the operation of a vehicle carrying a single load unit that was non-divisible; (3) no axle load weighed more than 18,000 pounds; (4) the permit was for a single trip only; and (5) the permit was issued for the shortest practicable distance only.[5] 47 O.S. 116.3(a) (1951).
¶ 17 Pursuant to the language reinforcing the second exception to the weight limits of federal 127(a), the federal funding mandate is "not to be construed to deny apportionment to any State allowing the operation within such State of any vehicles . . . which the State determines could be lawfully operated within such State on July 1, 1956."[6] The consistent approach of other jurisdictions in analyzing this language has been that if a state's 1956 law imposed conditions to the granting of permits for overweight vehicles, then the state may not apply less stringent conditions with respect to the granting of permits for overweight vehicles today, without contravening the federal funding mandate of federal 127(a).
¶ 18 For instance, in Bunch v. Cobb, 257 S.E.2d 225 (S.C. 1979), the court reasoned that a single trip condition to South Carolina's permit authority statute in effect on July 1, 1956, remained, even though the explicit single trip language had been removed from the permit authority statute by subsequent amendment. See also State ex rel. Dick Irvin, Inc. v. Anderson,525 P.2d 564, 567 (Mont. 1974) (holding that Montana's permit authority statute in effect on July 1, 1956, prevailed over a subsequently enacted permit authority statute); accord, SouthDakota Trucking Association, Inc. v. South Dakota Department ofTransportation, 305 N.W.2d 682 (S.D. 1981).
¶ 19 The courts in Bunch, Anderson, and South DakotaTrucking refused to read anything more or less into their respective states' permit authority than that which existed on July 1, 1956. We therefore conclude that, under the second exception of federal 127(a), the Commissioner's authority to issue a permit, allowing vehicles which exceed the federal weight limits of federal 127(a) to travel on the Interstate System in Oklahoma, is limited to the same conditions under which such a permit could have been granted on July 1, 1956.
 IV. THE THIRD EXCEPTION: GROUP OF AXLE WEIGHT LIMITS IN EFFECT ON JANUARY 4, 1975
¶ 20 The third and final exception found in federal 127 was added in 1974, with the introduction of the Federal Bridge Formula. 23 U.S.C.A. 127(a). The Federal Bridge Formula creates different group of axle weight limits depending on a vehicle's number of axles and the distance in feet between the extreme of any group of two or more of the vehicle's consecutive axles.Id. According to federal 127(a), if a state had corresponding group of axle weight limits on January 4, 1975, greater than the federal group of axle weight limits, then those corresponding state group of axle weight limits are allowed under federal 127(a). Id.
¶ 21 On January 4, 1975, Oklahoma had a bridge table based upon its own bridge formula for off-interstate highways
(off-interstate table) that provided group of axle weight limits and an overall gross vehicle weight limit of 90,000 pounds. 47O.S. 14-109(b) (1975) (emphasis added). On this same date, however, Oklahoma also had a bridge table for interstatehighways (interstate table) that provided group of axle weight limits and an overall gross vehicle weight lower than the federal group of axle weight limits and the overall gross vehicle weight limit of federal 127(a). 47 O.S. 14-109(a) (1975) (emphasis added).
¶ 22 Because of the different group of axle weight limits and overall gross vehicle weight limit in Oklahoma's interstate table and off-interstate table in effect on January 4, 1975, a question arises as to which limits may be utilized for vehicles using the Interstate System in Oklahoma under the federal funding mandate. This question was indirectly addressed by A.G. Opin. No. 75-282 and A.G. Opin. No. 86-139, opinions issued on January 30, 1976, and January 9, 1987, respectively. Attorney General Opin. No. 75-282 concluded, and A.G. Opin. No. 86-139 agreed, that the Commissioner has the authority to issue overweight permits for vehicles traveling the Interstate System in Oklahoma that exceed the federal weight limits but are within the limits prescribed by Oklahoma law for use on all other Oklahoma highways.[7] In reaching this conclusion the Attorney General in A.G. Opin. No. 75-282 relied on a Federal Highway Administrator's (FHWA) interpretation of federal 127(a) issued in January, 1975.
¶ 23 An examination of the FHWA's interpretation does not, however, support the conclusions of A.G. Opin. No. 75-282 and A.G. Opin. No. 86-139. The FHWA was addressing some confusion "as to the correct meaning of the amendments made to the `grandfather clause' of 23 U.S.C.A. 127." 40 Fed.Reg. 3330 (January 1975). According to the interpretation, thirteen western states, including Oklahoma, "had laws which provided for weights of over 80,000 pounds for vehicles using highways off the InterstateSystem, and lower weights for vehicles using the Interstate System." Id. (emphasis added).
¶ 24 The issue to be decided by the FHWA was whether the revised grandfather language adopted in 1975 referred to the lower or the higher limits. Id. In reaching the conclusion that the lower state limits for Interstate use were referred to in federal 127, the Administrator reasoned that while a vehicle weighing more than 80,000 pounds could be lawfully operated within a state on its off-Interstate highways, the operation would not have been lawful on the Interstate System in such a state on January 4, 1975, such operation being contrary to federal 127(a). The Administrator used public policy to support this argument and concluded that since the primary purpose of federal 127 is to protect the Interstate System highways from premature damage:
 [t]his purpose can best be achieved by construing the "grandfather clause" so as to permit use of Interstate highways by only those vehicles having gross weights that would have allowed their lawful operation on the Interstate System on the "grandfather" date.
40 Fed.Reg. 3330 (1975).
¶ 25 An interpretation by an agency like the Federal Highway Administration charged with implementation of a statute is generally accorded substantial deference. See Blum v. Bacon,457 U.S. 132, 141 (1982); see also Chevron U.S.A. v. NaturalResources Defense Council, Inc., 467 U.S. 837, 844 (1984) (recognizing that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer). Indeed, a federal court in Nebraska, addressing a related issue, deferred to the FHWA's interpretation discussed above. Nebraska v. Dole, No. CV-87-145 (D. Neb. 1987).
¶ 26 In light of Blum, Chevron, and Dole, we follow the FHWA's interpretation of the language added to federal 127(a) regarding the January 4, 1975, grandfather date. The off-interstate table's group of axle weight limits and its overall gross vehicle weight limit of 90,000 pounds in effect on January 4, 1975, may not be utilized under the third exception, because vehicles having group of axle weights or overall gross vehicle weights higher than the weight limits provided by the interstate table could not have been lawfully operated on the Interstate System in Oklahoma on January 4, 1975.
¶ 27 Accordingly, we conclude that Oklahoma's current group of axle weight limits and its overall gross vehicle weight limit of 90,000 pounds, all of which are based on the off-interstate table and now apply to vehicles using the Interstate System, may not be utilized under the third exception to the vehicle weight limits of federal 127(a). See 47 O.S. 1991, 14109(a)(2). We reach this conclusion because on January 4, 1975, the federal weight limits were greater than Oklahoma's corresponding group of axle weight limits and its overall gross vehicle weight limit that applied to vehicles using the Interstate System. 47 O.S. 14-109(a) (1975). To the extent A.G. Opin. No. 75-282 and A.G. Opin. No. 86-139 conflict with this analysis, they are withdrawn.
 V. OKLAHOMA'S COMPLIANCE WITH THE FEDERAL FUNDING MANDATE
¶ 28 As discussed above, the weight limits of federal 127(a), incorporating state law in effect on July 1, 1956, provide a single axle weight limit of 20,000 pounds, a tandem axle weight limit of 34,000 pounds, group of axle weight limits based on the Federal Bridge Formula, and an overall gross weight limit of 80,000 pounds. Oklahoma's corresponding single axle weight limit of 20,000 pounds and its tandem axle weight limit of 34,000 pounds comply with two of these weight limits of federal 127(a). 47 O.S. 14-109(a)(1), 47 O.S. 14-109(b) (1991).
¶ 29 In two instances, however, the weight limits of the Oklahoma Code exceed the weight limits of federal 127(a). First, Oklahoma's current Interstate table provides an overall gross vehicle weight limit of 90,000 pounds. 47 O.S. 14-109(a)(2) (1991). Second, group of axle weight limits in this table exceed the corresponding group of axle weight limits of federal 127(a).[8] Id. 20
¶ 30 The express language of the Oklahoma Code requires that all weight limits in the Oklahoma Code "shall be subject to the limitations imposed by Title 23, United States Code, Section 127."47 O.S. 14-101(c) (1991). In construing this language, the primary rule is to ascertain and give effect to the intent of the legislative body as expressed in the statute. Jackson v.Independent School Dist. No. 16, 648 P.2d 26, 29 (Okla. 1982);accord Darby-Lynde Co. v. Alexander, 51 F.2d 56, 58 (10th Cir. 1931).
¶ 31 When the intent is "plainly discernible from the provisions of the statute when considered as a whole, the real purpose and intent of the legislative body will prevail over the literal import of the words employed." Id. at 58. Moreover, the letter of a statute is not to be followed when it "leads away from the real intent of the Legislature and to conclusions which are inconsistent with the general purpose of act." Bell v.United Farm Agency, 296 P.2d 149, 152 (Okla. 1956).
¶ 32 The intent of the language of 47 O.S. 14-101(c) (1991) requiring that Oklahoma's weight limits comport with the weight limits of federal 127(a) is plainly discernible from the language of the Oklahoma Code when considered as a whole. The intent is to ensure the apportionment to Oklahoma by the United States Secretary of Transportation of its appropriated federal highway funds by requiring compliance with the federal funding mandate of federal 127(a).
¶ 33 When considered as a whole, all substantive provisions of the Oklahoma Code accordingly comply with the federal funding mandate. As discussed above, in only two instances does the Code suggest departure from the weight limits of the federal funding mandate. The Interstate table in 47 O.S. 14-109(a)(2), with its group of axle weight limits and its overall gross vehicle weight limit of 90,000 pounds, was originally adopted as the off-interstate table in 1972 to apply only to the use of off-interstate highways in Oklahoma. 47 O.S. 14-109(b) (1972). In 1977, the Legislature, in amending several provisions of the Oklahoma Code, provided that this off-interstate table would apply to the use of the Interstate System as well.[9] 47 O.S. 14-109(a)(2) (1977). We do not construe this action by the Legislature to intend a departure from its efforts to comply, in all instances, with the federal funding mandate in order to receive federal highway funds.
¶ 34 Rather, we read the Oklahoma Code as a whole and find that the intent of the Legislature is to require compliance with the federal funding mandate, a purpose embodied in 47 O.S.14-101(c) (1991). See Darby-Lynde, 51 F.2d at 58. Concluding otherwise would be inconsistent with the general purpose of the Oklahoma Code as expressed in 14-101(c). Bell, 296 P.2d at 152.
¶ 35 We therefore conclude that in order to follow the intent of the Oklahoma Code, which is to ensure the apportionment of federal highway funds, the weight limits of the Oklahoma Code that exceed the corresponding weight limits of federal 127(a) must be read to comply with those corresponding federal limits. Accordingly, to the extent that the group of axle weight limits of the table in 47 O.S. 14-109(a)(2) and its overall gross weight limit of 90,000 pounds exceed the corresponding federal weight limits of federal 127(a), the corresponding weight limits of federal 127(a) must be followed in order to abide by the intent of the Legislature and to ensure the receipt of federal highway monies.
¶ 36 In addition to Oklahoma's weight limits, Oklahoma's current permit authority must also be examined in light of the plain intent of 47 O.S. 14-101(c). The second exception to the weight limits of federal 127(a) allows for the issuance, by the Commissioner and subject to his discretion, of permits for vehicles with weights exceeding the federal weight limits as long as the five single trip emergency permit conditions in effect on July 1, 1956, are met. The statute establishing the single trip emergency permit conditions was repealed in 1972, however. 1972 Okla. Sess. Laws, c. 56, 2.
¶ 37 The Oklahoma Code now provides that the State Transportation Commission "shall formulate, for the State Trunk Highway System, including the [Interstate System], and for all other highways or portions thereof, rules and regulations governing the movement of vehicles or loads which exceed the size or weight limitations specified by the provisions of Chapter 14 of this title." 47 O.S. 1991, 14-118(a). Such rules and regulations formulated by the Transportation Commission:
 shall be the basis for the development of a system by the Commissioner of Public Safety for the issuance of permits for the movement of oversize or overweight vehicles or loads and shall include, but not be limited to, provisions for duration, seasonal factors, hours of the day or days when valid, special requirements as to flags, flagmen and warning or safety devices, and other such items as may be consistent with the intent of this section.
47 O.S. 14-118(a) (1991).
¶ 38 The only other condition is that the Commissioner issue permits for the movement of necessary overweight vehicles consistent with the following obligations: (1) protect the motoring public from potential traffic hazards; (2) protect the highway surfaces, structures, and private property; and (3) provide for the normal flow of traffic with a minimum of interference. Id.
¶ 39 Both the Transportation Commission and the Commissioner have promulgated rules in accordance with 47 O.S. 14-118(a), but neither set of rules contains a provision for the single trip emergency permit and its five conditions. Current permit authority under those rules purports to allow vehicles which could not have been lawfully operated on the highways of Oklahoma on July 1, 1956, to operate on the Interstate System in Oklahoma today. Under the current conditions for the issuance of a permit, a vehicle weighing over 80,000 pounds can be issued a permit without any of the 1956 conditions first being satisfied. Such a vehicle could not have been lawfully operated in Oklahoma on July 1, 1956.
¶ 40 Reading the Oklahoma Code as a whole, 47 O.S. 14-118(a) must be read in a manner consistent with 47 O.S. 14-101(c) to ensure compliance with the funding mandate of federal 127(a) Therefore, the authority of the Commissioner and the Transportation Commission to enact rules relating to permits under the second exception in federal 127(a) is limited by the five single trip emergency permit conditions in effect on July 1, 1956.[10]
 ¶ 41 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. Under the second exception to the federal vehicle weight limits of 23 U.S.C.A. 127(a), the Commissioner of Public Safety has the authority to issue permits allowing vehicles which exceed any or all of the four weight limits of 23 U.S.C.A. 127(a) to travel on the Interstate System in Oklahoma, but the issuance of such permits is limited to the same conditions under which such permits could have been granted on July 1, 1956.
 2. Under the third exception to the vehicle weight limits of 23 U.S.C.A. 127(a), Oklahoma's group of axle weight limits and its overall gross vehicle weight limit of 90,000 pounds, found at 47 O.S. 14-109(a)(2) (1991), may not be utilized for vehicles using the Interstate System in Oklahoma.
 To the extent A.G. Opin. No. 75-282 and A.G. Opin. No. 86-139 conflict with the analysis and conclusions herein, they are withdrawn.
 3. The intent of the Legislature, as plainly expressed in the Oklahoma Highway Safety Code, 47 O.S. 14-101 (1991), et seq., is that Oklahoma's vehicle weight limits comport with the weight limits of 23 U.S.C.A. 127(a), to ensure that the United States Secretary of Transportation apportions to Oklahoma its appropriated federal highway funds. Accordingly, to the extent that the group of axle weight limits of the table in 47 O.S. 14-109(a)(2) and its overall gross weight limit of 90,000 pounds exceed the corresponding federal weight limits of 23 U.S.C.A. 127(a), the corresponding weight limits of 23 U.S.C.A. 127(a) must be followed in order to abide by the intent of the Legislature and to ensure the receipt of federal highway monies. The intent of the Oklahoma Code also dictates that the authority of the Commissioner of Public Safety and the Transportation Commission to enact rules relating to permits under the second exception in 23 U.S.C.A. 127(a) is limited by the five single trip emergency permit conditions in effect on July 1, 1956.
SUSAN BRIMER LOVING ATTORNEY GENERAL OF OKLAHOMA
COOPER BRETT ROBINSON ASSISTANT ATTORNEY GENERAL
[1] Federal 127(a) provides, in pertinent part:
 No funds shall be apportioned in any fiscal year under section 104(b)(1) of this title to any State which does not permit the use of the Interstate System within its boundaries by vehicles with a weight of 20,000 pounds carried on any one axle . . . or with a tandem axle weight of 34,000 pounds . . . or a gross weight of at least 80,000 pounds for vehicle combinations of five axles or more. However, the maximum gross weight to be allowed by any State for vehicles using the Interstate System shall be 20,000 pounds carried on one axle . . . and a tandem axle weight of 34,000 pounds . . . and with an overall maximum gross weight . . . on a group of two or more consecutive axles produced by application of the following formula
W=500 ((LN/(N-1)) + 12N + 36)
 where W equals overall gross weight on any group of two or more consecutive axles to the nearest 500 pounds, L equals distance in feet between the extreme of any group of two or more consecutive axles, and N equals the number of axles in group under consideration . . . Provided, That such overall gross weight may not exceed 80,000 pounds . . . except for those vehicles and loads which cannot be easily dismantled or divided and which have been issued special permits in accordance with applicable State laws, or the corresponding maximum weights permitted for vehicles using the public highways of such State under laws or regulations established by appropriate State authority in effect on July 1, 1956, except in the case of the overall gross weight of any group of two or more consecutive axles on any vehicle . . . on the date of enactment of the Federal-Aid Highway Amendments of 1974, whichever is the greater. . . . This section shall not be construed to deny apportionment to any State allowing the operation within such State of any vehicles or combinations thereof . . . which the State determines could be lawfully operated within such State on July 1, 1956, except in the case of the overall gross weight of any group of two or more consecutive axles, on the date of enactment of the Federal-Aid Highway Amendments of 1974."
23 U.S.C.A. 127(a) (emphasis added; italics in original). The date of enactment of the Federal-Aid Highway Amendments of 1974 was January 4, 1975.
[2] An axle load was defined as "the total on all wheels whose centers may be included between two (2) parallel transverse verticle sic planes forty inches (40") apart. 47 O.S.Supp. 1955,sec. 116.1[47-116.1](4)(a) (footnote omitted).
[3] Oklahoma did not have a corresponding tandem axle weight limit on July 1, 1956, to compare to the federal tandem axle weight limit.
[4] Predecessor to the State Transportation Commission.
[5] While the Commissioner had the authority and discretion to issue the single trip emergency permit, its issuance was subject to the approval of the State Highway Commission, i.e., the Transportation Commission. 47 O.S. 116.3(a) (1955).
[6] A federal court in South Dakota, in an unpublished decision, determined that a state court, not the federal government, determines what could be lawfully operated on a state's highway system on July 1, 1956. Janklow v. Dole, No. Civ. 84-4268 (D.S.D. 1985). In Janklow, on motions for summary judgment, the court ruled from the bench and held:
 "It's my view that the law contained in federal 127(a) as amended in 1982 provides that the states can issue permits over 80,000 pounds per vehicle if they had the authority to do that in 1956. . . . To determine what state law permitted at that time, we look to the state decision because the — in our federal system, the state courts determine what — what state law permits." Id. (Emphasis added).
In Oklahoma no state court has determined what state law permitted on July 1, 1956.
[7] It should also be noted that in 1977, the Legislature, consistent with these Attorney General opinions, provided that the off-interstate table would apply to the Interstate System in Oklahoma as well. 47 O.S. 14-109(a)(2) (1977). See,
discussion herein under part V., "Oklahoma's Compliance with the Federal Funding Mandate, at pp. 20-22.
[8] The Oklahoma Code allows special permits to be issued for vehicles with more than six axles so long as the permit "not exceed the Table `B' federal weights formula imposed by Title 23, U.S. Code, Section 127." 47 O.S. 14-109(c) (Emphasis added). It could be argued that this section is another instance in which the Oklahoma weight limits could exceed the weight limits of federal 127(a). Given the language of 47 O.S. 14-101(c) (1991), however, Oklahoma's group of axle weight limits and the overall gross vehicle weight limit may not exceed those set forth in federal 127(a). See, discussion infra pp. 18-20.
[9] See, n. 7, supra, and corresponding discussion at p. 19.
[10] This opinion does not address the method by which its conclusions should be implemented Nor does it address what effect, if any, this opinion has on permits issued under existing agency rules. Rather, these determinations require factual considerations which are within the regulatory ambit of the Transportation Commission and the Commissioner of Public Safety.See, Chevron Oil. Co v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d. 296 (1971) (discussing retroactive application of a court decision interpreting a statute). This opinion also does not address the implementation of a permit procedure under the first exception of federal 127(a).