**CENTER FOR AUTO SAFETY, et al., Plaintiffs,**

v.

**Elizabeth H. DOLE, et al., Defendants.**

**CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, et al., Plaintiffs,**

v.

**Elizabeth H. DOLE, et al., Defendants.**

**Civ. A. Nos. 83–3885, 84–0136.**

United States District Court, District of Columbia.

March 27, 1984.

Katherine I. Hall, Elaine N. Herskowitz, John M. Quinn, Arnold & Porter, Washington, D.C., for Center for Auto Safety.

Lester B. Seidel, Krooth & Altman, Washington, D.C., John Duncan Varda, DeWitt, Sundby, Huggett, Schumacher & Morgan, Madison, Wis., Consolidated Freightways.

Robert D. Nesler, Civil Div., Federal Programs Branch, Dept. of Justice, Washington, D.C. for defendants.

Nelson J. Cooney, Gen. Counsel, Robert A. Hirsch, American Trucking Associates, Inc., Washington, D.C. for amicus American Trucking Associations, Inc.

Wayne S. Bishop, John C. Kirtland, Bishop, Liberman, Cook, Purcell & Reynolds, Washington, D.C., for amicus Roadway Exp., Inc.

## MEMORANDUM

GESELL, District Judge.

These consolidated cases are each before the Court on separate motions for preliminary injunction which have been elaborately documented and fully briefed and argued. The focus of these motions is on interim rules promulgated by the Secretary of the United States Department of Transportation designating routes on which longer and wider trucks may operate nationwide. These rules were adopted pursuant to the Surface Transportation Assistance Act of 1982 (STAA), Pub.L. No. 97–424, 96 Stat. 2097 (Jan. 6, 1983). The interim designations were issued in April, 1983,[1] and have been subsequently modified in part to address concerns raised by several state governments.[2]

---

1. 48 Fed.Reg. 14,844 (April 5, 1983).

2. A number of states brought lawsuits challenging the interim designations. These suits have apparently been resolved through negotiation and counsel for the Secretary has advised the Court that at present there are no "live" disputes between the Secretary and individual state governments concerning the interim designations.

The respective sets of plaintiffs in these two cases take differing positions. The plaintiff groups in Civil Action No. 83–3885 (referred to herein as Center for Auto Safety) are public interest organizations concerned with highway safety and environmental matters relating to highway use. They ask the Court to enjoin the interim rules, contending that the Secretary has misapplied the statutes by designating particular highways without the requisite safety findings and by designating highways without regard to the statutory minimum lane width requirements. Plaintiffs in Civil Action No. 84–0136 (referred to herein as Consolidated Freightways), on the other hand, do not oppose the interim rules as such but urge the Court to direct the Secretary to issue "final" rules forthwith and to require the Secretary to designate in the final rules all highways that can "safely accommodate" the vehicles allowed by the STAA.

The Secretary contends that her interim designations are consistent with the STAA and that the highways designated are safe for the longer and wider trucks. The Secretary also argues that the STAA does not require designation of *all* interstate and primary highways that can safely accommodate the larger trucks. Finally, while the Secretary concedes that under § 411 of the STAA final regulations were to be issued by October 3, 1983, the Secretary urges that the delay to date has been justified and that since the final rules are expected to issue within two months, following protracted rulemaking proceedings now in their final stage, no injunction setting a court-mandated deadline is warranted.

### Background

In order to consider the merits of these contentions it is necessary briefly to elaborate on the legislative context in which they arise and to identify the precise provisions that govern the Secretary's responsibilities.

In 1956, Congress authorized the establishment of a national system of "federal-aid" highways to be constructed by the states with the assistance of federal funds. *See* Federal-Aid Highway Act of 1956, Pub.L. 84–627, 23 U.S.C. § 101 *et seq.* (1956), and subsequent amendments thereto. Currently there are four federal-aid systems: the Interstate System, the Primary System, the Secondary System, and the Urban System. 23 U.S.C. § 103(a).[3] The regulations at issue in the present suit affect only the Primary System.

Until recently the only vehicle size limitations imposed by the federal government were restrictions on the width and weight of vehicles traveling on the Interstate System. *See* 23 U.S.C. § 127 (1976). Aside from these specific provisions, each state was generally free to set its own rules regarding length, width and weight of vehicles and the use of "tandem" trucks. Beginning late in 1982, however, Congress enacted a series of statutes to establish uniform standards for state regulation of vehicle length, configuration, width and weight on certain designated portions of the federal-aid highway systems. The principal statute is the STAA, enacted on January 6, 1983.

Under that statute Congress gave the Secretary of Transportation responsibility for selecting federal-aid Primary System highways to carry traffic subject to these new standards. Congress provided:

(1) The Secretary shall designate as qualifying Federal-aid Primary System highways · subject to the provisions of subsections (a) and (c) those Primary System highways that are capable of safely accommodating the vehicle lengths set forth therein.

(2) The Secretary shall make an initial determination of which classes of high-

---

**3.** The Interstate System is so located as to connect the nation's major cities and industrial centers by routes which are as direct as possible. 23 U.S.C. § 103(e)(1). The Primary System "consist[s] of an adequate system of connected main roads important to interstate, statewide and regional travel, consisting of rural arterial routes and their extensions into or through urban areas." 23. U.S.C. § 103(b)(2). At the present time the federal government pays 90 percent of the cost of projects on the Interstate System, 23 U.S.C. § 120(c), and 75 percent of the cost of projects on the Primary, Secondary and Urban Systems. 23 U.S.C. § 120(a).

ways shall be designated pursuant to paragraph (1) within 90 days of the date of enactment of this section [*i.e.*, by April 6, 1983].

(3) The Secretary shall enact final rules pursuant to paragraph (1) no later than two hundred and seventy days from the date of enactment of this section [*i.e.*, by October 3, 1983] and may revise such rules from time to time thereafter.

STAA § 411(e), 49 U.S.C. § 2311(e).

Section 411(a) of the STAA prohibits the states from imposing vehicle length limitations of *less* than stated dimensions on the Interstate System and on the classes of Primary System highways designated by the Secretary. States may not impose a maximum limitation of less than 48 feet on the length of a semitrailer in a truck tractor-semitrailer combination and a limitation of less than 28 feet on the length of any semitrailer or trailer operating in a truck tractor-semitrailer-trailer combination ("tandem" trucks). Congress expressly barred the states from prohibiting tandem trucks on the Interstate System and the classes of Primary System highways designated by the Secretary in § 411(c). Section 411(b) also prohibits any overall length limitations on commercial motor vehicles.

Section 411 establishes a *minimum* requirement that states permit the longer vehicles authorized by § 411 to travel on the classes of highways designated by the Secretary. Nothing in § 411 precludes any state from allowing these vehicles to operate on Primary System highways not designated by the Secretary or on other roadways within the state.[4]

In § 321 of the Department of Transportation and Related Agencies Appropriations Act, 1983, Pub.L. No. 97–369, 96 Stat. 1765

(Dec. 18, 1982), Congress also directed that no federal-aid highway funds be apportioned to any state which imposes a vehicle width limitation of more or less than 102 inches on the Interstate System or on designated Primary System highways which meet a 12-foot lane width requirement. In April of 1983 this provision was reenacted as § 416 of the STAA. Motor Vehicle Width Regulations, Pub.L. 98–17, 97 Stat. 59 (Apr. 5, 1983).[5]

No State, other than the State of Hawaii, shall establish, maintain, or enforce any regulation of commerce which imposes a vehicle width limitation of more or less than 102 inches on any segment of the National System of Interstate and Defense Highways, or any other qualifying Federal-aid highway as designated by the Secretary of Transportation, with traffic lanes *designed* to be a width of twelve feet or more; ... [Emphasis added.]

STAA § 416(a).

As with § 411, § 416's requirements are minimum requirements. They do not preclude states from allowing 102-inch-wide vehicles to travel on additional federal-aid highways or other roads within the states.[6]

Following enactment of these provisions the Federal Highway Administration (FHWA) engaged in a conscientious effort to develop interim rules as required by the STAA. Working in conjunction with state highway agencies, the FHWA attempted to construct a unified "network" of STAA highways applicable to both the longer and wider trucks. Numerous changes were made in initial designation determinations in response to concerns raised about particular highways, and the agency negotiated out areas of disagreement with the states to the fullest extent possible.[7] The "final

---

4. Prior to enactment of the STAA 36 states permitted tandem trucks to operate; in 17 of these states tandem trucks were permitted on all public roads. Affidavit of Kevin E. Heanue ¶ 11.

5. This statute also changed the effective dates of the "width" provisions of the Appropriations Act to match the effective dates of the "length" provisions of § 411 of the STAA.

6. In addition to width, length and configuration requirements, § 133 of the STAA amended 23

U.S.C. § 127 to change the weight limits applicable to the Interstate System. The interim designations do not involve weight restrictions and this provision is not at issue in the present case.

7. This process is described in the unusually informative and detailed affidavits of Kevin E. Heanus, FHWA Director of Highway Planning, and Shelton G. Strickland, Chief of the FHWA's Special Programs Branch, and need not be summarized here. The Court notes the agency's assertion, not contradicted by other parties to

interim" designations were published on July 8, 1983, and were amended in minor respects on August 4 and August 30, 1983.[8]

 Given the time constraints under which the FHWA was operating, these interim designations were reached in a careful and rational manner. The Court thus rejects the argument advanced in both cases that the Secretary's designations were arbitrary and capricious except to the extent that these contentions are based solely on the argument that the Secretary misapplied the STAA in drafting the interim regulations. This question, which lies at the heart of each case, is more fully addressed below.[9]

### Civil Action No. 83–3885

Center for Auto Safety (CAS) challenges two aspects of the Secretary's designations. First, CAS argues that the Secretary has violated § 416 by designating highways which contain segments of roadway with lanes less than 12 feet in width, in contravention of that section's limitation of designations for the use of wider trucks to those highways "with traffic lanes designed to be a width of twelve feet or more." Second, CAS contends that § 411 has also been violated because the Secretary has not undertaken a road-by-road safety review prior to issuing the interim designations. This argument is based on the language within § 411(e)(1) which states that the Secretary shall designate highways "that are capable of safely accommodating" the longer trucks.

With respect to each of these contentions CAS has shown a significant likelihood of success on the merits. The Secretary does not contest the fact that some portions of the highways designated do not have 12-foot lanes, but justifies the interim rules based on the congressional objective of creating a unified system of STAA highways connecting various urban centers throughout the country. The Secretary presented evidence that such a system requires, in addition to the Interstate System, designation of Primary System roads which include segments with a lane width of less than 12 feet. The Secretary contends that a "restrictive" reading of § 416 would prevent designation of such a unified system as to wider trucks.[10]

In fulfilling what the Secretary perceives to be Congress' objective of opening interstate commerce to the use of the wider trucks, however, the Secretary is not free to simply ignore the traffic lane width requirements of the statute. Nor can the Court adopt one of the convoluted interpretations of the term "traffic lanes designed to be a width of twelve feet" suggested by the government and by *amicus curiae.* The plain meaning of that term is that it refers to traffic lanes *intended* to be constructed to that width. The present designations thus appear to be inconsistent with § 416 in that they admittedly include highways which were "designed" to be a lesser width.

It may be that in passing § 416 Congress was unaware that a 12-foot lane requirement would prevent the widespread use of 102-inch trucks on non-Interstate System STAA highways and, had it considered this point, it would have chosen a more relaxed approach to lane width requirements. It is also possible, however, that Congress sim-

---

this proceeding, that the FHWA has "stated a willingness to immediately amend the interim network should a specific safety problem arise. To date, [the FHWA has] not received any requests to amend the interim network based on adverse safety experience or operational problems." Heanus aff. ¶ 29.

**8.** 48 Fed.Reg. 31,588 (July 8, 1983); 48 Fed.Reg. 35,388 (Aug. 4, 1983); 48 Fed.Reg. 39,222 (Aug. 30, 1983).

**9.** In considering each of the motions for preliminary injunction sought in this case, the Court is

to consider (1) plaintiff's likelihood of success on the merits; (2) whether irreparable injury will occur in the absence of preliminary relief; (3) whether a grant of relief will harm other parties interested in the proceedings; and (4) where lies the public interest. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977).

**10.** This would not necessarily affect the use of some longer trucks, of course, since the Secretary could designate one system for 102-inch trucks and a larger, inclusive system for longer trucks of standard width.

ply determined that an 8½-foot-wide truck requires a 12-foot lane for safety reasons and that Congress wanted the Secretary to designate a non-Interstate system of highways for wide trucks only to the extent that such a system could be assembled from those highways of 12-foot width. "Where, as here, there are plausible reasons for Congress' action, our inquiry is at an end. . . . The language of the statute is clear, and we have historically assumed that Congress intended what it enacted." *United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980).[11] The Court must conclude, therefore, that CAS has demonstrated a substantial likelihood of success on its claim that the interim regulations violate § 416 of the STAA.

As to Center for Auto Safety's second point, the Court also finds a likelihood of success on the merits but reads the statute in a manner somewhat differently than CAS suggests. As the government points out, it is readily apparent from the STAA's statutory scheme that Congress did not intend an empirical "mile-by-mile" safety analysis prior to designation. The short deadlines imposed by Congress for promulgation of interim and final rules belies any intent to require such an exhaustive and time-consuming undertaking.[12] Nevertheless, while the Secretary need not determine the safety of each designated highway in this manner, she must at the very least establish safety guidelines or standards which will enable her to determine which "classes of highways" qualify for interim designation under § 411(b). This designation of highways by "classes" under the STAA does not contemplate a designation process governed principally by the desire to construct a complete, integrated system and which addresses safety concerns only through *ad hoc* negotiations with state governments over contested road segments.

A showing of likelihood of success on the merits, of course, is not sufficient standing alone to entitle CAS to preliminary injunctive relief. Such relief is appropriate only to prevent an existing or immediately threatened irreparable injury. *Continental Group, Inc. v. Amoco Chemical Corp.,* 614 F.2d 351, 359 (3d Cir.1980). Unless a statute specifically so provides by grant of enforcement authority to those affected or otherwise—and there is no such provision in the STAA—the mere fact of a possible violation of the statute alone is not enough to create irreparable injury. *Ashland Oil, Inc. v. FTC,* 409 F.Supp. 297, 307–08 (D.D.C.), *aff'd,* 548 F.2d 977 (D.C. Cir.1976). As the Supreme Court has stated:

> Suitors may not resort to a court of equity to restrain a threatened act merely because it is illegal or transcends constitutional powers. They must show that the act complained of will inflict upon them some irreparable injury.

*United Fuel Gas Co. v. Railroad Commission,* 278 U.S. 300, 310, 49 S.Ct. 150, 152, 73 L.Ed. 390 (1928). "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 954–55, 3 L.Ed.2d 988 (1959) [footnote omitted].

In the present case CAS has not demonstrated irreparable injury. The interim regulations at issue have been in effect for some months. With respect to the alleged dangers of longer trucks CAS

---

**11.** The legislative history provides little guidance in addressing this point or others raised in this case. The enactment of the STAA followed several years of legislative activity involving different versions of bills addressed to the problems of inconsistent state regulation. The STAA itself, however, differed significantly from previous bills, and the House and Conference committee reports include only a cursory discussion of the provisions which the Court must address. No Senate report was prepared.

**12.** The Court must also assume that Congress was aware that the states, not the FHWA, are responsible for keeping data on most federal-aid highways, and that the quality of these records—and hence the ability to quickly determine the safety characteristics of a particular highway—varies significantly from state to state.

should have brought forward concrete facts to support its claim of irreparable injury if such existed, yet it has not done so. The mere possibility of an increased safety risk, which is at most all that plaintiffs have shown, is not enough, particularly in light of the evidence presented by other parties tending to show that tandem trucks are as safe as single trucks. *See Ashland*, 409 F.Supp. at 307.

As to the safety hazards of 102-inch trucks, the injury alleged by CAS is even more remote. No evidence was introduced which showed that these trucks are currently in use on roads where they are not already allowed by state law. Furthermore, since the interim rules—the only ones which the present case addresses—will soon be replaced with "final" rules, the period with which the Court must be concerned in determining irreparable injury is a short one, and there is no indication that 102-inch trucks will come into widespread use during this brief period.

Other factors also militate against issuance of a preliminary injunction. Disturbing the *status quo* by issuing an injunction will force trucking companies to incur higher costs and may disrupt interstate commerce to some degree. In light of the expectation that final rules will soon issue, the public interest also favors denying injunctive relief. The disruption to interstate commerce of such a short-lived injunction, which would simply suspend the STAA program only until the final rules are issued, outweighs CAS' unsubstantiated concerns for public safety.

Particularly given the absence of any showing of irreparable injury, the Court simply cannot disturb the *status quo* by issuing an injunction which, in any event, would not affect the soon-to-be-issued final designations. The motion of plaintiffs in

Civil Action No. 83–3885 for a preliminary injunction must therefore be denied.

### Civil Action No. 84–0136

■ Under the terms of § 411(e)(3) of the STAA the Secretary was directed to "enact final rules ... no later than [October 3, 1983] and may revise such rules from time to time thereafter." At present final rules have not yet been promulgated. As previously indicated, however, the Secretary has represented to the Court that such rules are expected to be issued covering the roadways of all but a few states during May of 1984. Unwilling to accept the Secretary's representation, Consolidated Freightways seeks a preliminary injunction ordering the Secretary to issue final rules within 45 days.[13]

Guidelines for exercising the Court's equitable powers with respect to ordering compliance with statutory deadlines for issuance of regulations were set out by the D.C. Circuit in *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692 (D.C. Cir.1975). In a case such as this the Court is "called on to separate justifications [for delay] grounded in the purposes of the Act from the footdragging efforts of a delinquent agency."

A federal equity court may exercise its discretion to give or withhold its mandate in furtherance of the public interest, including specifically the interest in effectuating the congressional objective incorporated in regulatory legislation. We think the court may forebear the issuance of an order in those cases where it is convinced by the official involved that he has in good faith employed the utmost diligence in discharging his statutory responsibilities.

---

13. Consolidated Freightways also argues that the Secretary has a duty to designate as STAA highways *all* those highways "that are capable of safely accommodating" the longer and wider trucks. The Secretary disputes this interpretation of the STAA and it is clear that the *interim* designations were based on the understanding that the Secretary was under no such obligation. There would appear to be little support in the statute for Consolidated Freightway's position. Recognizing the realities of this litigation, however, Consolidated Freightways has chosen not to challenge the validity of the interim designations but instead to rely on its argument that the Court should order issuance of final designations. In light of the Court's determination on this point, the issue of whether all "safe" highways must be designated need not be decided.

*Train,* 510 F.2d at 711 [footnotes omitted]. At the present stage of this litigation there is no evidence whatsoever to indicate that FHWA is engaged in "footdragging"; indeed, quite to the contrary it appears from the record that the agency is making a conscientious effort to go forward with the designation process in an expeditious manner. To date delays in meeting the deadline appear to be primarily the result of the time necessary to address safety concerns raised with respect to particular highways. Such delays are clearly "grounded in the purposes of the Act."

This case would be much different if the FHWA had repeatedly failed to meet time commitments made to the Court. *Compare State of Illinois v. Gorsuch,* 530 F.Supp. 340 (D.D.C.1981). At the present time, however, the Court has no reason to believe that the agency will not issue final rules within the two-month estimated period, and the delay to date has been adequately justified. Consolidated Freightways has thus demonstrated no likelihood of success on its claim that it is entitled to the relief it seeks in its preliminary injunction motion and in its complaint.

Inasmuch as the interim designations will remain in place pending issuance of the final rules, any harm to Consolidated Freightways and other trucking companies as a result of additional delay would be relatively small.[14] Furthermore, considerations of the public interest dictate also that concerns regarding safety be adequately addressed before the final rules issue. The Court concludes, therefore, that the motion of Consolidated Freightways for a preliminary injunction must be denied.

### Conclusion

Accordingly, for reasons stated above, the Court denies each motion for preliminary injunction. An appropriate Order is filed herewith denying the injunctions and setting a status conference to schedule further proceedings.

---

14. Indeed, it is possible that the final designations will encompass *fewer* highways than the interim designations, and hence Consolidated Freightways' costs will increase rather than de-

crease as a result of the change from interim to final designations. If such is the case, the delay in issuance of final designations will be to Consolidated Freightways' benefit.