**CENTER FOR AUTO SAFETY, et al., Plaintiffs,**

v.

**Elizabeth H. DOLE, et al., Defendants.**

**CONSOLIDATED FREIGHTWAYS, et al., Plaintiffs,**

v.

**Elizabeth H. DOLE, et al., Defendants.**

**Civ. A. Nos. 83–3885, 84–0136.**

United States District Court, District of Columbia.

June 29, 1984.

On Motion for Attorneys' Fees Sept. 7, 1984.

Katherine I. Hall and Elaine N. Herskowitz, Washington, D.C., John M. Quinn, Washington, D.C., for plaintiffs in No. 83–3885.

John Duncan Varda, Madison, Wis., Lester B. Seidel, Washington, D.C., for plaintiffs in No. 84–0136.

Robert D. Nesler, Dept. of Justice, Washington, D.C., for defendants.

**MEMORANDUM AND ORDER**

GESELL, District Judge.

These consolidated cases challenge interim regulations promulgated by the Secretary of Transportation pursuant to the Surface Transportation Assistance Act of 1982 (STAA), Pub.L. No. 97–424, 96 Stat. 2097 (1983), *as amended,* designating certain highways on which longer and wider trucks may operate nationwide. 48 Fed.Reg. 14,844 (April 5, 1983). On March 27, 1984, this Court filed a Memorandum and Order denying motions for preliminary injunctions brought by plaintiffs in each case.[1] 582 F.Supp. 1444. Plaintiffs in Civil Action No. 83–3885 (collectively "Center for Auto Safety") have now moved for summary judgment. Defendants oppose and have moved to dismiss both cases, contending that all issues raised herein are now moot in view of new regulations published June 5, 1984, which establish "final" designations of highways. 49 Fed.Reg. 23,302 All parties have had opportunity to address these motions both in writing and in oral argument before the Court.

■ The final regulations have completely superceded the interim regulations, which are now a "dead letter" and have no force or effect. The final regulations are based on a different administrative record which is not before the Court. The highways designated by the final regulations differ to some degree from those in the interim regulations. Moreover, in certain respects, at least, the rationale offered by the Secretary in support of the new regulations differs significantly from that put forth in the interim regulations. Finally, the legal standards which governed the interim designations may differ from those which govern the final designations.[2] It is

1. The Court concluded, *inter alia,* that plaintiffs in Civil Action No. 83–3885 had demonstrated a significant likelihood of success on their claim that the interim regulations violated sections 411 and 416 of the STAA, but had failed to demonstrate irreparable injury. The Court found that plaintiffs in Civil Action No. 84–0136 had not demonstrated a likelihood of success on the merits of their claim that they were entitled

to an injunction ordering the Secretary to issue final regulations within a set period.

2. Compare the language of subsection 411(e)(2) of the STAA, which refers to designation in the interim rules of those "classes of highways" which meet the requirements of subsection 411(e)(1), with the language of subsection 411(e)(3), which places no such gloss on those requirements with respect to the final rules.

clear, therefore, that the validity of the final regulations, which is not at issue in the present proceeding, presents a different case than the validity of the interim regulations.

Plaintiffs argue that the final regulations perpetuate the same legal deficiencies they contend infected the interim regulations. A variety of new and different issues will also be presented by the final regulations, however, and the mere possibility that the interim and final regulations may share some of the same general shortcomings does not keep the controversy as to the interim regulations alive. The reasoning of the Court of Appeals in a recent case which presented somewhat similar circumstances makes this clear.

> The Department's promulgation of No. 150, which rescinded No. 66, presents a new case. The Treasury's most recent action was the product of a third rulemaking proceeding; it was a different regulation, containing on its face reasoning not previously articulated by the agency as its policy. In addition, No. 150 contains substantive provisions different from those of its predecessors. Whether these differences give rise to a legal distinction between No. 150 and No. 94 remains to be seen. Any person complaining of the procedures of No. 150 should attack it by a separate action ...

*Center for Science in the Public Interest v. Regan*, 727 F.2d 1161, 1166 (D.C.Cir. 1984).

This is not a case which is "capable of repetition, yet evading review." *See* 727 F.2d at 1167 n. 6. "Final" regulations are now in effect. Moreover, the Secretary was not only "legitimately empowered to initiate further rulemaking," 727 F.2d at 1164–65, but issued the final regulations pursuant to a statutory *requirement* that she do so, albeit in an untimely fashion. There are no grounds, therefore, for continuing to litigate interim regulations no longer in effect. To do so would simply result in an advisory ruling, not the resolution of a live controversy.

The present dispute over the interim regulations is moot. If the final regulations now in effect are to be challenged, this must be done in a new, unrelated proceeding. Accordingly, plaintiffs' motion for summary judgment is denied, defendants' motion to dismiss Civil Action No. 83–3885 is granted, and the case is dismissed.[3]

Plaintiffs in Civil Action No. 84–0136 do not oppose defendants' motion to dismiss their case as moot. This motion is granted and Civil Action No. 84–0136 is also dismissed.

SO ORDERED.

## ON MOTION FOR ATTORNEYS' FEES

This case is before the Court on the motion of plaintiffs Center for Auto Safety, et al. (the Center), for an award of $19,537.50 in attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, for their work in this litigation. The Court has considered the briefs of both sides and the supporting affidavits thereto.

The Center brought this action on December 28, 1983 alleging that interim regulations of the Department of Transportation that designated highways for extra-wide and extra-long trucks violated Sections 411 and 416 of the Surface Transportation Assistance Act of 1982, Pub.L. No. 97–424, 96 Stat. 2097 (Jan. 6, 1983). Specifically, it contended first that some of the highways designated for extra-wide trucks (102 inches in width) contained segments with lanes narrower than 12 feet wide, contravening Section 416's limitation of highways designated for such use to those "with traffic lanes designed to be a width of twelve feet or more." Second, it contended that highways were designated by the department for extra-long trucks without a road-by-road safety review, contravening the language of Section 411(e)(1) that the Secretary shall designate high-

---

**3.** Plaintiffs are not, of course, "deprived of the benefits of [this Court's Memorandum of March 27, 1984], which this [Memorandum and Order] leaves intact and does not vacate." *Regan*, 727 F.2d at 1168 n. 6.

ways "that are capable of safely accommodating" the longer trucks.

In a Memorandum opinion of March 27, 1984, this Court found that the Center had shown "a significant likelihood of success on the merits" for both of these contentions. 582 F.Supp. 1444, 1448–49 (D.D.C. 1984). However, the Court denied the Center's motion for a preliminary injunction because it had not shown irreparable injury. 582 F.Supp. at 1449–50. On June 5, 1984, the Department published final regulations superceding the interim regulations challenged by the Center. 49 Fed.Reg. 23,-302. Accordingly, on June 29, 1984, this Court denied the Center's motion for summary judgment and granted the defendants' motion to dismiss the case as moot. This motion for attorneys' fees followed.

The first issue is whether the Center can be considered the "prevailing party" in the litigation qualifying it for attorneys fees. The government argues that it cannot be so considered, because the Center lost all the substantive motions in the litigation, including the government's motion to dismiss as moot in light of the new regulations. The Center contends that it prevailed in that the new regulations were substantially influenced by its lawsuit, particularly by this Court's ruling of March 27, 1984 rejecting the government's interpretation of Sections 411 and 416.

■ Plaintiffs may be considered "prevailing parties" for purposes of attorneys' fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). A dismissal based on mootness does not bar considering that the plaintiff has prevailed, as long as the fee claimant can make two showings, that it substantially received the relief sought in the lawsuit and that the lawsuit contributed to the relief. *See Environmental Defense Fund v. EPA*, 716 F.2d 915, 919 (D.C.Cir.1983).

1. The benefit, however, must be more than a remand for reconsideration of a decision against the claimant. *See Hanrahan v. Hamp-*

*Cf. Miller v. Staats*, 706 F.2d 336, 341 (D.C.Cir.1983). This Circuit has stressed that this two-part test is applied liberally. *Id.*

■ To satisfy the first test, the plaintiff need not show that the eventual result is the one it sought, only that the result "represents, in a real sense, a disposition that furthers [its] interests." *Commissioners Court of Medina County v. United States (Medina I)*, 683 F.2d 435, 441 (D.C.Cir. 1982). The claimant can even vigorously oppose the final result without affecting its status as a prevailing party, as long as it can be said to benefit from the outcome in a way sought by the lawsuit. *See id.; Commissioners Court of Medina County v. United States (Medina II)*, 719 F.2d 1179, 1181 (D.C.Cir.1983).[1]

■ Accordingly, it is irrelevant that plaintiffs have filed another lawsuit challenging the final regulations that mooted their claims in the instant suit. Instead, the inquiry must be whether those final regulations furthered their interests in a way sought by the suit. With regard to Section 416's 12-foot-wide lane requirement, those regulations acknowledge a need, as the Court recognized, to gather more precise data on the actual width of lanes and a possible need to reduce the number of roads presently designated for travel by extra-wide trucks in accordance with that data. The interim regulations acknowledged no such need. The process of redesignating roads has not been completed, so the extent of change cannot yet be determined. But the agency indicated that it was "considering a requirement that either 85 percent, 90 percent, or 100 percent of the mileage of each highway have 12-foot wide lanes." 49 Fed.Reg. at 23,308. Even if it adopts the 85 percent figure, thousands of miles of roads will lose their designation for the extra-wide trucks. Thus the Center achieved some of the relief it sought on this issue. The fact that it has

*ton*, 446 U.S. 754, 758–59, 100 S.Ct. 1987, 1989–90, 64 L.Ed.2d 670 (1980) (per curiam).

not received all the relief it sought goes not to whether it legally prevailed for attorneys' fee purposes but to the ultimate equity of whether to award fees and how much. *See Medina I,* 683 F.2d at 442–43.

Similarly, with regard to the Section 411 claim, the final proposed regulation contained safety criteria absent from prior regulations, thus partly granting the relief sought by the Center, which was to force the agency to base its designation of highways capable of carrying extra-long trucks on safety criteria and not on ad hoc negotiations with state highway officials.

The second part of the test requires a showing of some causal link between the lawsuit and the relief won. The plaintiffs must show that their claims were a "causal, necessary or substantial factor" in obtaining the relief won, *Medina I,* 683 F.2d at 442, or that their claims "more likely than not ... contributed to defendant's action...." *Miller v. Staats,* 706 F.2d at 341.

The Center plainly meets this test for the Section 416 claim of its suit. The final regulations promulgated by the Federal Highway Administration expressly state that the agency's action in regard to Section 416 was taken to comply with the Court's March 27 opinion. 49 Fed.Reg. 23,-302, 23,306–08 (June 5, 1984). With regard to the relief won on Section 411, there is no direct indication that the action was taken as a result of the lawsuit. But the Court is directed to look at "whatever objective data are available," including the chronological sequence of events. *Medina I,* 683 F.2d at 442. Given the sequence of events here, and the clear shift in the agency's interpretation of Section 411 consistent with the Court's March 27 Memorandum, the Court concludes that plaintiffs have shown a sufficient causal relationship between their limited success in this lawsuit and the proposed final regulations.

■ Thus the Court determines that the Center is the prevailing party for purposes of attorneys fees. The next issue is whether the government's position was not "substantially justified." 28 U.S.C.

§ 2412(d)(1)(A). The government has the burden of showing that its litigation position had a reasonable basis in both law and fact. This burden on the government is one of reasonableness, *see Nichols v. Pierce,* 740 F.2d 1249, 1259 (D.C.Cir.1984), or "slightly more stringent than one of reasonableness," *Cinciarelli v. Reagan,* 729 F.2d 801, 804–05 (D.C.Cir.1984). Here, the government defends its litigation position only by noting that it won all the substantive motions in the case, which is essentially its same argument as to why the Center should not be found to have prevailed. The Center, however, does not seek fees for those aspects of the litigation that formed the basis for the government's victory: the irreparable harm requirement and the mootness claim.

Accordingly, the Court must examine the reasonableness of the government's litigation position as to Sections 416 and 411. It is significant that the government does not now defend its interpretation of Sections 416 and 411 during the litigation. It is clear to the Court that that interpretation was not substantially justified. The government's reading of Section 416 flew in the face of the plain meaning of the statute. And the government defended the agency's compliance with Section 411 even though the agency had plainly done nothing to assure that the designated highways met some type of safety standards as the section clearly required.

The government's ultimate abandonment of its defense of the agency's compliance with the sections does not make this a case of immediate surrender by the government where an award of attorneys fees would not be appropriate. *See Del Manufacturing Co. v. United States,* 723 F.2d 980, 985–86 (D.C.Cir.1983); *Spencer v. NLRB,* 712 F.2d 539, 555 (D.C.Cir.1983). As the court noted in *Spencer,* "[i]t seems clear that, if the government does not immediately accede to the plaintiff's demand, but instead initially opposes his claims and then at some later stage ... surrenders, the United States will be liable for attorneys' fees ...." 712 F.2d at 555 n. 58. The

government in this case waited almost six months before its rulemaking of June 5, 1984 essentially conceded the lack of merit in its interpretations of Sections 411 and 416. The Court concludes that its litigation position as to these sections of the statute was not substantially justified.

The Court must now evaluate the specific fee requests of the Center to determine what fee is reasonable. The government advances only general, unfocused arguments opposing the fee sought. Nonetheless, the Court must make a careful, independent review. The starting point in this inquiry, of course, is to determine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 103 S.Ct. at 1939.

The number of hours claimed by the Center in their lawyers' sworn affidavits totals 118.75 for attorney Hall, 135 for attorney Herskowitz, and 51.75 for attorney Quinn. For both Hall and Herskowitz, a 20 percent reduction was made in the hours spent on the preliminary injunction motion to account for the lack of success on the irreparable harm claim. In addition, both deducted duplicative and nonproductive hours, as well as hours spent on tasks such as photocopying and filing briefs that would normally have been handled by support staff. Considering the complexity of the issues in this case and the voluminous administrative record, the Court finds these hours more than reasonable. Attorney Quinn, who acted as a senior consultant on the case, did not report any reduction of hours spent, but the Court also finds his total reasonable.

For these hours, the Center seeks hourly rates of $75 for Quinn and Hall and $50 for Herskowitz. These rates are well under the market rates in the District of Columbia for attorneys of their skill and experience, and the Court finds them reasonable.

However, this is not the end of the matter, because where a plaintiff has won only limited results, the product of total hours reasonably spent times a reasonable rate "may be an excessive amount." *Hensley v. Eckerhart*, 103 S.Ct. at 1941; *see also Blum v. Stenson*, — U.S. —, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). That is the case here, because the results obtained were limited to the Center's victory at the preliminary injunction stage on their interpretation of Sections 411 and 416, and to the agency's subsequent response to the Court's holding on those points.

The Center made an effort to account for this limited success by deducting from the hours spent 20 percent of Hall's and Herskowitz's hours on the preliminary injunction motion, as described above, and also deducting all hours spent in responding to the government's successful motion to dismiss as moot, as well as hours spent on the consolidated case filed by Consolidated Freightways. They request reimbursement for time spent only on the Complaint, the motions for preliminary injunction and summary judgment, and this fee application. The Court finds, however, that additional hours should be deducted as follows:

First, attorney Quinn's hours should also be reduced by 20 percent to account for the lack of success on the irreparable harm component of the preliminary injunction motion. This brings his total hours to 41.4 and his total fee allowed at $75 an hour to $3,105.

Second, the hours of both attorneys Hall and Herskowitz should be reduced to account for the failure on their summary judgment motion. These deducted hours total 38.5 for Hall and 50 for Herskowitz. (Quinn claimed no hours on this motion.)

Third, the hours of Hall should be reduced another 4.5 hours for time spent on correspondence with the Justice Department in May, as indicated in her affidavit.

Hours for attorney Hall thus total 75.75, and her fee allowed at $75 an hour will be $5,681.25. Attorney Herskowitz's hours total 85, and her allowed fee at $50 an hour will be $4,250.

In accord with the above, the Court awards the Center as a reasonable attorney fee a total of $13,036.25. An appropriate Order is filed herewith.