**Representative Mike SYNAR, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**NATIONAL TREASURY EMPLOYEES UNION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. Nos. 85–3945, 85–4106.

United States District Court, District of Columbia.

July 27, 1987.

Alan B. Morrison and Katherine A. Meyer, Washington, D.C., for plaintiffs Representative Mike Synar, et al., in Civ. A. No. 85–3945.

Lois G. Williams and Gregory O'Duden, Washington, D.C., for plaintiff Nat. Treasury Employees Union in Civ. A. No. 85–4106.

Merril Hirsh, Asst. U.S. Atty., Washington, D.C., for defendant.

GASCH, District Judge.

## I.  INTRODUCTION

The Court has before it applications for attorneys' fees and costs in the above-captioned cases, popularly known as the "Gramm-Rudman" litigation.  Plaintiffs in the consolidated cases contend that they are due reasonable attorneys' fees for their role in litigating the constitutionality of the Balanced Budget and Emergency Deficit Control Act of 1985 (the "Gramm-Rudman-Hollings Act"), 2 U.S.C. § 901 *et seq.* (1985 Supp.).  The fee applications here reviewed are controlled by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (1985 Supp.).

## II.  BACKGROUND

In order to review adequately plaintiffs' applications for attorneys' fees, it is necessary to recount briefly the history of the underlying litigation.  On December 12, 1985, the President signed into law the

Gramm-Rudman-Hollings Act which sets a maximum federal deficit amount for fiscal years 1981 through 1991. The Act, in its original form, required "automatic" reductions in federal spending programs should the federal deficit exceed the maximum deficit amount in any given year. Under section 251 of the Act, the Comptroller General reported his conclusions to the President regarding the budget reductions needed to ensure compliance with the targeted maximum deficit amount. The President was then required to issue a "sequestration" order mandating the budget reduction specified by the Comptroller General. If Congress failed to reduce federal spending within a certain period of time following the President's sequestration order, then that order took effect and the spending reductions therein were enforced.[1]

Within hours following the President's signing of the Act, Congressman Synar filed a complaint seeking declaratory relief that the Act was unconstitutional. Shortly thereafter, the National Treasury Employees Union ("NTEU") filed an identical suit.[2] The two actions were consolidated and heard before a special three-judge panel provided for under the terms of the Gramm-Rudman-Hollings Act. *See* 2 U.S. C. § 922.

The plaintiffs in the Gramm-Rudman litigation presented their challenge to the Act on two grounds: that the Act constituted an unlawful delegation of legislative power by Congress to the President and other government officials and that the powers assigned to the Comptroller General, a member of the legislative branch, constitutionally must be assigned to executive branch officials. The position of defendant United States on motion for summary judgment was (1) the congressional plaintiffs must be dismissed for lack of standing, (2)

the Act did not unconstitutionally delegate legislative authority, and (3) the role of the Comptroller General in the automatic deficit reduction process unconstitutionally violated the principle of separation of powers.

In a per curiam decision, the District Court concluded that both NTEU and the congressional plaintiffs had standing to challenge the Act. *Synar v. United States*, 626 F.Supp. 1374, 1381–82 (D.D.C. 1986). In its holding on the merits, the District Court found that the Act unconstitutionally granted executive powers to the Comptroller General, an officer of the legislative branch and removable by Congress. *Id.* at 1403. The three-judge panel rejected plaintiffs' argument of unlawful delegation. *Id.* at 1390–91. Upon expedited review to the Supreme Court pursuant to 2 U.S.C. § 922(b) and (c), the District Court was affirmed. *Bowsher v. Synar*, — U.S. —, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). The Supreme Court did not reach the delegation issue. Instead, it affirmed the lower court's decision on the basis of its separation of powers ruling.

The congressional plaintiffs and NTEU have now moved the Court for an award of attorneys' fees for their role in challenging the constitutionality of the Gramm-Rudman Act. Counsel for the congressional plaintiffs claims entitlement under the EAJA to an award of $52,000.00; NTEU has applied for a total fee award of $59,938.88. *See* Plaintiffs' Applications for Attorneys' Fees (filed July 31, 1986).

### III. DISCUSSION

Under the well established "American Rule," each party in a lawsuit ordinarily bears its own attorney's fees. The Supreme Court has reaffirmed the viability of this rule where no express statutory autho-

---

1. In anticipation of constitutional attack to this "automatic" deficit reduction process, section 274(f) of the Act contained a "fallback" deficit reduction plan. Under this fallback provision, the conclusions of Congress, rather than of the Comptroller General, serve as the basis of the President's sequestration order. The fallback provision would take effect if the "automatic" deficit reduction process was found to be unconstitutional.

2. The District Court also permitted the United States Senate, the Comptroller General and the Speaker and Bipartisan Leadership Group of the United States House of Representatives to intervene. *Synar v. United States*, 626 F.Supp. 1374, 1378–79 (D.D.C.), *aff'd*, — U.S. —, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). All intervenors argued that the Gramm-Rudman-Hollings Act was constitutional.

rization exists to the contrary. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The Equal Access to Justice Act represents one example where a statute provides for the award of attorney's fees, under certain conditions. The pertinent language of the statute is as follows:

> (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

■ It is clear from the face of this statute that a private party applying for attorney's fees under the EAJA must clear three hurdles: (1) the applicant must be the "prevailing party"; (2) the position of the United States must fail to be "substantially justified"; and (3) no "special circumstances" exist to prevent an unjust fee award. It is the government's burden to prove that its position was "substantially justified" or that a "special circumstance" precludes a fee award. *Spencer v. National Labor Relations Board,* 712 F.2d 539, 557 (D.C. Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). In view of the outcome of this case and the litigating positions of plaintiffs and the United States, the Court denies plaintiffs' request for fees.

A. *Prevailing Party*

■ The Court finds that neither plaintiff has qualified as a "prevailing party," as that term has been interpreted in the case law of this jurisdiction. Admittedly, the litigation immediately following enactment of the balanced budget law was not "ordinary" either in substance or procedure. For example, judicial review of the constitutionality of the Gramm-Rudman Act, by the Act's own terms, was to advance in an expeditious manner.[3] Moreover, the case was unusual in the sense that both plaintiffs and the United States *agreed* upon the "winning" issue of the case, that the automatic deficit reduction process violated the principle of separation of powers. This position was argued most strongly by the Assistant Attorney General. Plaintiffs relied primarily on their delegation of powers argument.

It cannot be stated with accuracy that plaintiffs "prevailed" over the United States. Unfortunately, the EAJA does not define the term "prevailing party." The Supreme Court has stated that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1982) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir. 1978)). This definition of a "prevailing party" has been cited in this jurisdiction in EAJA cases. *See Massachusetts Fair Share v. Law Enforcement Assistance Administration,* 776 F.2d 1066, 1067 (D.C.Cir. 1985); *Fleming v. Bowen,* 637 F.Supp. 726, 730 (D.D.C.1986).

This definition, however, sheds little light on the situation at bar where both parties had a "share" in achieving success. Often, it is clear that a plaintiff prevailed. *See e.g., Massachusetts Fair Share,* 776 F.2d at 1067–68 (even though case remanded to agency, plaintiff established entitlement to relief on all grounds and therefore prevailed); *Fleming v. Bowen,* 637 F.Supp. at 730 (plaintiff clearly prevailed on merits

---

**3.** "It shall be the duty of the District Court for the District of Columbia and the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of claims brought under subsection (a) [which challenge the constitutionality of § 252 or the Act as a whole]." 2 U.S.C. § 922(b).

where she is entitled to social security benefits previously denied). Other times, the parties may split the success: a plaintiff may win on one issue and the government may win on another. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 434–35, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) (plaintiff may not recover for services on unsuccessful claim which is unrelated to successful claim, *i.e.*, based upon different facts and legal theories); *Battles Farm Company v. Pierce*, 806 F.2d 1098, 1103–04 (D.C.Cir. 1986) (where plaintiff prevailed on one issue and the government prevailed on another, a plaintiff may recover fees for both intertwined issues unless the government is justified for its entire litigating position).

In the circumstances at bar, the defendant United States "won" on the two substantive positions it took before the courts. Plaintiffs, on the other hand, "lost" on their unlawful delegation argument and "won" on the separation of powers argument they shared with defendant United States. It is not simply that defendant won more issues than plaintiffs, but also that the prevailing legal issue was put forth by *both* parties. In *Action on Smoking and Health v. CAB*, 724 F.2d 211 (D.C. Cir.1984), plaintiff "ASH," which prevailed against the CAB on the issue of whether CAB's regulation of smoking on airplanes was sufficient, joined the CAB in opposing arguments by intervenors averring that the CAB had no authority to regulate smoking aboard aircraft. In claiming that it should be awarded fees for the time spent in opposing intervenors' arguments, ASH noted that "its work was in the interest of the air traveling public." *Id.* at 216. The D.C.Circuit, however, held that "ASH cannot be considered a 'prevailing party' on an issue on which both ASH and the government took the same position." *Id.* (citing to *Firebird Society v. Board of Fire Commissioners*, 556 F.2d 642, 644 (2d Cir.1977) (plaintiffs not entitled to fees for time spent joining in defense of settlement)).

The language of the D.C.Circuit in *ASH v. CAB* is applicable to the situation at bar

where both plaintiffs and defendant United States opposed intervenors' claims that the role of the Comptroller General in the "automatic" deficit reduction process was constitutional. Accordingly, plaintiffs' applications for a fee award on the basis that plaintiffs were "prevailing parties" are denied.

It is noted that NTEU places considerable emphasis on the fact that both the executive branch, as party-defendant, and the legislative branch, as various intervenors, participated in this litigation. For NTEU, this fact somehow obfuscates who really voiced the "position of the United States." [4] NTEU believes that not only did plaintiffs prevail over the intervenors' position but that the President's signature on the Gramm-Rudman Act negates the position that defendant United States took before two courts.

■ First, it is no surprise that the intervening legislative officials opposed executive officials in a lawsuit focusing on the separation of powers between the legislative and executive branches. Plaintiffs should not be permitted to maneuver this fact and declare themselves the "prevailing party" merely because the position of the intervening legislative officials lost. The "position of the United States" in this case was advocated by United States Assistant Attorney General Willard, as is authorized by law. *See* 28 U.S.C. § 516. It simply makes no sense to accept NTEU's theory that the "position of the United States" is variable in every case wherein one government branch is pitted against another. As this Court stated clearly in its opinion below: "On the merits, the position of the United States is that the Act does not unconstitutionally delegate legislative authority but that the role of the Comptroller General in the automatic deficit reduction process violates the principle of separation of powers." *Synar v. United States*, 626 F.Supp. at 1379. Both aspects of the United States' position ultimately prevailed.

■ Second, the Court finds that the President's signature did not negate the subsequent litigating position of the United

---

**4.** NTEU notes that the EAJA defines "United States" as including "any official of the United States acting in his or her official capacity." 28 U.S.C. § 2412(d)(2)(C).

States. Upon signing the Act, the President asserted that the role of the Comptroller General was questionable but that the "fallback" provision preserved the constitutionality of the Act as a whole:

> In signing this bill, I am mindful of the serious constitutional questions raised by some of its provisions. The bill assigns a significant role to the Director of the Congressional Budget Office and the Comptroller General in calculating the budget estimates that trigger the operative provisions of the bill. Under the system of separated powers established by the Constitution, however, executive functions may only be performed by officers in the executive branch. The Director of the Congressional Budget Office and the Comptroller General are agents of Congress, not officers in the executive branch.
>
> The bill itself recognizes this problem and provides procedures for testing the constitutionality of the dubious provisions. The bill also provides a constitutionally valid alternative mechanism should the role of the Director of the Congressional Budget Office and the Comptroller General be struck down. It is my hope that these outstanding constitutional questions can be promptly resolved.

21 Weekly Compilation of Presidential Documents at 1491 (Dec. 12, 1985). The Court finds that the position of the President expressed above is the same position that the United States successfully defended before this Court and the Supreme Court.

For the foregoing reasons, the Court concludes that plaintiffs did not prevail below and, therefore, should not be awarded attorney's fees under the EAJA.

### B. *Substantially Justified*

Under the EAJA, the government has the opportunity to show that its litigating position was "substantially justified." [5] If it meets this burden, a court cannot award attorney's fees. *Battles Farm Co. v. Pierce*, 806 F.2d at 1101; *Spencer v. NLRB*, 712 F.2d at 557. Even if plaintiffs could be considered to have "prevailed" below in this case, the government's position was substantially justified and, therefore, no attorney's fees are awarded.

■ The D.C.Circuit has held that the position of the United States is substantially justified if it acted "slightly more than reasonably." *FEC v. Rose*, 806 F.2d at 1087; *see also Battles Farm Co.*, 806 F.2d at 1101 n. 11.[6] It is apparent from the case law that the United States is acting "slightly more than reasonably" when its position below was of substantial merit and based solidly in both fact and law. *Id.* at 1092 (government's position below was substantially justified where it was "entirely correct" and had "substantial merit"); *Battles Farm Co.*, 806 F.2d at 1101–02 (whether government's position was substantially justified depends upon "clarity of the governing law" at the time; the court merely examines extant law to see if government's position has support).

■ In the matter at bar, the government's position clearly satisfies the standard of being "slightly more than reasonable." Just as in *FEC v. Rose*, the government's position was substantially justified for it was "entirely correct." The position of the United States on both the delegation and separation of powers issues was amply supported in the law. In sum, the govern-

---

5. The Court is aware that, in 1985, Congress amended the EAJA to provide that the "position of the United States" includes not only its litigating position but also "the action or failure to act by the agency upon which the civil action is based." Pub.L. No. 99–80, § 2(c)(2)(B), 99 Stat. 183, 185 (1985). By virtue of this amendment, the government must show that "both its position in the litigation and its conduct that led to the litigation were substantially justified." *FEC v. Rose*, 806 F.2d at 1086–87. This expanded definition of the "position of the United States" is not that pertinent to the dispute at bar. Judicial review of the Gramm-Rudman Act was im-

mediate. There simply was not much time for the United States to engage in conduct which "led" to the litigation.

6. In applying this standard, the Court is not wedded to the underlying judgment on the merits and must employ an "independent evaluation." *FEC v. Rose*, 806 F.2d at 1087. The D.C.Circuit further states that the underlying government action may even have been "arbitrary and capricious" but still be "substantially justified." *Id.* at 1087–90.

**416**

ment has more than met its burden of demonstrating substantial justification for its position below.

### C. Special Circumstances

█ Should the Court decide that plaintiffs were not prevailing parties or that the government's position was substantially justified, the Court need not find that "special circumstances" exist that make an award of attorney's fees unjust. *See* 28 U.S.C. § 2412(d)(1)(A).

Plaintiffs, of course, aver that the equities *favor* an award of attorney's fees. Plaintiffs state that their challenge of the Gramm-Rudman-Hollings Act "vindicated the public interest." They state that the constitutionality of the Act would never have been resolved if plaintiffs had not brought suit. Moreover, plaintiffs argue that it would be "unconscionable" not to award attorney's fees when plaintiffs were "invited" by the executive branch to bring suit.

The importance of plaintiffs' role in the Gramm-Rudman litigation is not questioned. The efforts by both plaintiffs in the litigation below were of significance and for a worthwhile purpose. However, these considerations are not the proper focus for an award of attorney's fees under the Equal Access to Justice Act. Simply put, the EAJA is not a broadly written fee-shifting statute which encourages meritorious litigation. As this Circuit has explained,

> The Equal Access to Justice Act is a fee-shifting statute that allows certain private parties to recover attorneys fees and other costs incurred as a result of litigation against the federal government. But unlike other fee-shifting statutes that are designed solely to encourage private "attorneys general" to bring meritorious litigation in the public interest and therefore ignore the reasonableness of the government's litigating position, the EAJA's purpose is somewhat different. It is designed to encourage small private plaintiffs and defendants to persevere against or resist the U.S. government if the government takes an unjustified litigating position. And, perhaps more importantly, the statute is

meant to discourage the federal government from using its superior litigating resources unreasonably—it is in this respect an "anti-bully" law.

*Battles Farm Co.*, 806 F.2d at 1101 (footnotes omitted).

### IV. CONCLUSION

Although plaintiffs' role in the underlying litigation was significant, their position did not prevail in this Court or in the Supreme Court. Moreover, the government's position surpasses the standard of being "slightly more than reasonable," thus the government was "substantially justified." For both of these reasons, plaintiffs' applications for attorneys' fees under the Equal Access to Judgment Act are denied.

This memorandum has been reviewed by my colleague on the three-judge court, Judge Norma Holloway Johnson, and I am authorized to state that she concurs. Judge (now Justice) Antonin Scalia felt that it would be inappropriate for him to take any position with respect to the resolution of this issue by this Court.