**NUCLEAR MILITARY MONITORING,**
**et al., Plaintiffs,**

**v.**

**William J. PERRY, Secretary of Defense, et al., Defendants.**

**Civil Action No. 95–1289.**

United States District Court,
District of Columbia.

July 31, 1996.

Award of Attorney Fees. Upon consideration of the entire record, the Court denies plaintiffs' motion for an award of attorney fees.

## BACKGROUND

The facts of this case are fully set out in the Court's Opinion of July 31, 1995, which denied plaintiffs' motion for a preliminary injunction.[1] In brief: plaintiffs Norman Buske and an organization called Nuclear Military Monitoring ("NMM") had been collecting biological samples from within the Restricted Area 2 ("RA2") in the Sinclair Inlet of Puget Sound to measure whether Puget Sound Naval Station ("PSNS") had been discharging more radioactive material into the Inlet than Naval safety standards allowed. At the time plaintiffs began collecting samples from RA2, PSNS was a restricted-access area into which vessels were not allowed to enter absent prior permission from the Navy. According to the language of 33 C.F.R. § 334.1240 (1995), swimmers, divers, and other individuals not embarked on vessels could enter RA2.[2] Plaintiffs collected the samples from RA2 by dispatching a boat to an area adjacent to the restricted-access site, with Buske's then swimming into RA2 to collect the samples. Generally, plaintiffs notified the Navy before swimming into RA2. Occasionally, the Navy would escort plaintiffs into the Inlet and would share the samples for its own research.

On September 22, 1994, and again on September 30, 1994, plaintiff Buske was detained by defendants when he swam into RA2 to gather biological samples. Plaintiff was tried in federal district court in Oregon on May 23, 1995, for a violation of 18 U.S.C. § 1382. He was acquitted of all charges against him by United States District Judge William L. Dwyer, who noted that 33 C.F.R. § 334.1240 explicitly excluded "vessels" from RA2, but did not explicitly preclude "swimmers" from entering RA2. On May 24, 1995, plaintiff took samples once again in RA2, escorted by

Robert C. Seldon, Sarah Levitt, Government Accountability Program, Washington, DC, for Plaintiffs.

Daniel F. Van Horn, Asst. U.S. Atty., U.S. Attys. Office, Washington, DC, for Defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are plaintiffs' Motion for an Award of Attorney Fees, defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for an Award of Attorney Fees, and Plaintiffs' Reply to Defendants' Objection to the Motion for an

---

1. This case then was captioned *Search v. Pena;* the Opinion denying the motion for a preliminary injunction is at 1995 WL 669235.

2. The Navy declined in 1992 to classify RA2 as a "security zone," which would have given the Navy the power to completely control all access to the inlet.

Department of Defense and Navy personnel. Plaintiff subsequently gave notice to defendants that he planned to conduct a follow-up study on June 13, 1995. On June 12, 1995, the local office of the Coast Guard published an emergency regulation, CGD13–95–028, establishing a combined security and safety zone on the waters surrounding the Shipyard. This emergency regulation, according to defendants, closed the loophole which previously allowed swimmers to enter RA2. Plaintiff was served with written notice on June 13, 1995, that he could be charged with a felony if he entered RA2.

In response, on July 10, 1995, plaintiffs filed a motion for a temporary restraining order and a preliminary injunction to prevent defendants from enforcing the emergency regulation. The Court denied both motions.

On July 12, 1995, representatives from the Environmental Protection Agency ("EPA") and the Washington State Department of Health accompanied the head of the Shipyard's Radiological Monitoring Branch to take biological samples in RA2.[3] On July 13, 1995, plaintiff Buske was escorted by the head of the Radiological Monitoring Branch and was permitted to take biological samples in waters immediately outside RA2 and from a land area of the Shipyard.[4]

On August 21, 1995, the Army Corps of Engineers ("Corps") issued an interim final rule amending 33 C.F.R. § 334.1240 to prohibit swimmers and other persons, in addition to vessels, from entering the restricted area without authorization. In the Federal Register notice accompanying the rule, the Corps invited written comments and set a deadline of October 20, 1995, to receive all comments. On October 19, 1995, the Government Accountability Project submitted its comments to the Corps.[5] On January 22, 1996, plaintiffs filed a second motion for a preliminary injunction. After considering all comments, the Corps decided to adopt the interim final rule as a final rule without modification. 61 Fed.Reg. 2117 (Jan. 25, 1996). On March 1, 1996, plaintiffs filed a motion to dismiss their motion for a preliminary injunction and their complaint on the grounds that the Corps' completion of the rulemaking process in amending 33 C.F.R. § 334.1240 mooted their action. The Court granted plaintiffs' motion to dismiss on March 18, 1996. Plaintiffs had specifically reserved the right to file a motion for attorney fees, and on April 17, 1996, plaintiffs filed their motion for an award of attorney fees under the Equal Access to Justice Act.

### DISCUSSION

■ Under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, the party seeking fees must first establish that it was the prevailing party. *Public Citizen Health Research Group v. Young*, 909 F.2d 546, 549 (D.C.Cir.1990). This Circuit employs a two-prong test to determine "prevailing party" status. *Center for Auto Safety v. Dole*, 595 F.Supp. 98, 101 (D.D.C.1984). First, plaintiff must substantially receive the relief sought, and second, plaintiff's lawsuit must have contributed to that relief. *Id.* According to the EAJA, if, and only if, the party makes this showing, the burden shifts to the government to show that its position was substantially justified. 28 U.S.C. § 2412; *Synar v. U.S.*, 670 F.Supp. 410, 415 (D.D.C.1987). The D.C. Circuit has held that "the position of the United States is substantially justified if it acted slightly more than reasonably." *Id.* (citing *FEC v. Rose*, 806 F.2d 1081, 1087 (D.C.Cir.1986)).[6]

---

**3.** According to defendants, this taking of samples was scheduled at some point prior to plaintiffs' filing of their motion for a preliminary injunction.

**4.** Defendants state that entry to the land areas of the Shipyard were open to the general public on the day that the plaintiff was allowed access.

**5.** The Government Accountability Project was added as a plaintiff in the November 1995 amended complaint.

**6.** The pertinent language of the statute is as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in addition to any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court

## I. Prevailing Party

Plaintiffs are required to establish that they are the prevailing parties in the lawsuit in order to be awarded attorney fees. 28 U.S.C. § 2412. Although "parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief," *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980), the party must have nonetheless received a significant part of the relief sought. *Lundin v. Mecham*, 980 F.2d 1450, 1457 (D.C.Cir.1992). Plaintiffs sought a temporary restraining order and a preliminary injunction to stop enforcement of Emergency Rule CG13–95–028, arguing that it interfered with their constitutional rights and did not comply with proper rulemaking requirements. Plaintiffs claim that although the Court denied the motions for a temporary restraining order and a preliminary injunction, during the litigation defendants took several actions in response to plaintiffs' filings that demonstrate that plaintiffs ultimately succeeded in this matter. However, plaintiffs fail to show that they have "substantially received" the relief that was sought. *See Center for Auto Safety*, 595 F.Supp. at 101.

### A. Constitutional Rights

Plaintiffs argued that their constitutional right to travel and their First Amendment right to freedom of speech were violated by defendants' allegedly unlawful emergency regulation. Plaintiffs asserted that defendants' emergency regulation was a grossly unconstitutional prior restraint on plaintiffs' attempts to study RA2 and an impermissible attempt to suppress plaintiffs' right to publish information pertinent to public health and safety. However, defendants' reasons for excluding plaintiffs were not based on the content of plaintiffs' speech. While plaintiffs clearly have the right to publish whatever they like, the government is not required to permit them free entry into restricted-access zones to allow them to gather whatever data they choose. *Elrod v. Burns*, 427 U.S. 347, 373–74 & n. 29, 96 S.Ct. 2673, 2689–90 & n. 29, 49 L.Ed.2d 547 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)); *Carroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); *Zemel v. Rusk*, 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965). For similar reasons, plaintiffs' right-to-travel argument fails; while plaintiffs have the right to travel on public land, they have no right to access quasi-public, Navy-controlled land. *Id.* Ultimately, plaintiffs' motions for a temporary restraining order and a preliminary injunction were both denied by this Court. Plaintiffs did not prevail on their constitutional claims; this Court concluded that plaintiffs' constitutional right to travel and First Amendment right to free speech were not violated.

### B. Rulemaking Requirements

Plaintiffs contend that defendants did not comply with proper rulemaking requirements and that their lawsuit caused defendants to commence and complete formal rulemaking to amend 33 C.F.R. § 334.1240 to exclude unauthorized persons from RA2, thereby making plaintiffs the prevailing party. The *Center for Auto Safety* test requires not only that plaintiffs substantially receive the relief sought, but that plaintiffs' lawsuit must have contributed to that relief. 595 F.Supp. at 101. However, there is no causal connection between plaintiffs' motion for a preliminary injunction and defendants' commencement and completion of formal rulemaking.

The driving force behind defendants' decision to undertake formal rulemaking to amend the regulation was not plaintiffs' civil action but rather Judge Dwyer's May 23, 1995, ruling that the regulation, as then written, did not specifically bar "persons" from RA2.[7] The record demonstrates that defen-

finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A).

**7.** 5 U.S.C. § 553(b)(B) allows for emergency rulemaking proceedings when an agency "for good cause finds ... that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." In addition, unless the agency finds good cause, an emergency regulation must be published in the Federal

dants undertook the necessary steps to start the formal rulemaking process well before plaintiffs filed their action.

On May 26, 1995, over a month prior to plaintiffs' filing suit, the Shipyard Commander wrote to the Commander, Naval Base Seattle, requesting that 33 C.F.R. § 334.1240 be amended to clarify that RA2 is for the exclusive use of the Navy, and to specifically exclude unauthorized persons from the area. *See* Pls.' Mot. For Award of Att'y Fees, Ex. 1. In a letter to the Corps dated May 30, 1995, the Commander, Naval Base Seattle, Rear Admiral H.F. Herrera, requested that such action be taken. *See id.*, Ex. 4. On June 9, 1995, Rear Admiral E.S. McGinley, Vice Commander of the Naval Sea Systems Command, requested that the Coast Guard establish a temporary security zone around the Shipyard. *See* Defs.' Mem. of P. & A. in Opp'n to Pls.' Mot. For an Award of Att'y Fees, Ex. A. Rear Admiral McGinley subsequently informed the Coast Guard that the Navy was in the process of seeking an amendment to the Corps' regulation set forth in 33 C.F.R. § 334.1240 to exclude unauthorized persons, in addition to vessels, from RA2, and that the purpose of the temporary Coast Guard security zone was to provide for the security of the vessels therein and to provide for public safety until such time as the administrative procedures for amending the Corps' regulation could be carried out. *Id.*

On June 12, 1995, the Coast Guard, acting under the authority of 33 C.F.R. Part 165, established a combined security and safety zone in the waters surrounding the Shipyard. By its own terms, that regulation, CGD13–95–028, was to expire on September 9, 1995. The Federal Register notice of the regulation stated the emergency need for this temporary regulation and informed the public that the regulation was needed as an interim measure until such time as 33 C.F.R. § 334.1240 could be amended through the formal rulemaking process. 60 Fed.Reg. 33120 (June 27, 1995). Plaintiffs' lawsuit was not filed until July 10, 1995. Thus, although defen-

dants did not begin the formal rulemaking process until July 1995, they had announced their intention to begin that process when they issued the emergency regulation on June 12, 1995, to immediately remedy the recently-determined loophole in the existing regulation.

Plaintiffs further allege that defendants would not have finalized the rulemaking process but for plaintiffs' second motion for a preliminary injunction. The facts show, however, that defendants were proceeding with the rulemaking process all along, well prior to plaintiffs' second motion. The Corps published the Interim Final Rule and sought comments beginning August 21, 1995. The comment period closed on October 20, 1995. On October 19, 1995, the Government Accountability Project submitted its comments to the Corps. The Corps submitted the public comments it received to the Navy on October 25, 1995. *See* Pls.' Mot. For an Award of Att'y Fees, Ex. 2. The Navy sent its response to the comments back to the Corps on December 15, 1995. *See id.*, Ex. 3. On January 22, 1996, plaintiffs filed their second motion for a preliminary injunction. After consideration of all comments, the final rule, in identical form to the interim rule, was published on January 25, 1996.

Plaintiffs contend that it was their January 22, 1996, motion that prompted the finalization of the rule on January 25, 1996. However, the record shows that the defendants were proceeding with the rulemaking process all along.[8] On March 1, 1996, plaintiffs filed a motion to dismiss their second motion for a preliminary injunction and their entire complaint. Plaintiffs' motion for a preliminary injunction was merely coincidental with the timing of the publication of the interim final rule in the Federal Register and did not cause defendants to finalize the rule.

Plaintiffs argue that despite the fact that the Court denied both their motion for a temporary restraining order and their first motion for a preliminary injunction, they

---

Register "not less than 30 days before its effective date...." 5 U.S.C. § 553(d).

8. The Corps took only slightly more than one month to analyze the comments and the Navy's response to those comments and to publish a final rule.

have, nonetheless, prevailed in this lawsuit. They claim that their motion for a temporary restraining order and a preliminary injunction furthered plaintiffs' interests, since the filings (1) caused defendants to allow plaintiffs access, albeit limited, to collect samples from RA2 during the course of the litigation, and (2) caused defendants to allow the EPA and the Washington State Department of Health to conduct an unscheduled dive for samples within RA2. These minor allowances fail to satisfy the *Center for Auto Safety* test used to determine prevailing party status. The reason plaintiffs were allowed access on July 13, 1995, to collect biological samples on a portion of the Shipyard's land was that the area was temporarily open to the public, for reasons wholly unrelated to plaintiffs' desire to conduct sampling or to their lawsuit. Additionally, the joint sampling of the Shipyard's restricted waters by the Navy, the EPA, and the Washington State Department of Health was not the relief plaintiffs sought through their lawsuit. Plaintiffs instead sought an order from this Court enjoining defendants from excluding plaintiffs from the Shipyard's waters. This relief was not attained. Plaintiffs are unable to show that they substantially received the relief sought and that their lawsuit contributed to that relief. 28 U.S.C. § 2412; *Center for Auto Safety*, 595 F.Supp. at 101.

## II. Substantially Justified

■ Even if plaintiffs met the prevailing party requirements, defendants' position was substantially justified. 28 U.S.C. § 2412; *Synar v. United States*, 670 F.Supp. 410, 415 (D.D.C.1987); *Battles Farm Co. v. Pierce*, 806 F.2d 1098, 1101 (D.C.Cir.1986); *Spencer v. NLRB*, 712 F.2d 539, 557 (D.C.Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). In determining whether defendants were substantially justified, all defendants need show is that they "acted slightly more than reasonably." *Synar*, 670 F.Supp. at 415 (citing *FEC v. Rose*, 806 F.2d 1081, 1087 (D.C.Cir.1986)); *Battles Farm Co.*, 806 F.2d at 1101 n. 11.

■ Defendants were substantially justified in promulgating Emergency Rule CG13–95–028 and in finalizing 33 C.F.R. § 334.1240.

Defendants contend that they were unaware of the seeming loophole in 33 C.F.R. § 334.1240 that permitted swimmers access to RA2 until District Judge Dwyer ruled that the regulation did not specifically exclude swimmers from the restricted zone. Defendants enacted the emergency regulation in order to quickly close this loophole, and to safeguard the security of the Shipyard and prevent any risk to those persons who might swim into the restricted zone. The need to immediately close this loophole in the regulation was urgent enough to justify enacting an emergency regulation. Defendants reinforced their position by declaring that the regulation would expire on September 9, 1995, and that a notice and comment period would then ensue for the proposed amended regulation. The Court concludes that defendants meet the burden of showing that they acted at least "slightly more than reasonably" in enacting Emergency Rule CG13–95–028. Therefore, even if plaintiffs could be found to be the prevailing party, defendants were substantially justified in their position and plaintiffs should be denied attorney fees. 28 U.S.C. § 2412; *Synar*, 670 F.Supp. at 415.

## CONCLUSION

For the reasons stated above, the Court denies plaintiffs' motion for attorney fees. An appropriate Order accompanies this Opinion.

## ORDER

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that plaintiffs' motion for attorney fees is denied.

SO ORDERED.